**UNITED STATES of America,
Plaintiff–Appellant,**

v.

**Larry Roscoe McGLOCKLIN,
Defendant–Appellee.**

No. 91–6121.

United States Court of Appeals,
Sixth Circuit.
Reargued Dec. 9, 1992.

Decided Sept. 17, 1993.

**1038**

Darryl Stewart, Asst. U.S. Atty., Ernest W. Williams, U.S. Atty., Nashville, TN, Joseph C. Wyderko (argued and briefed), Dept. of Justice, Crim. Div., Appellate Section, Washington, DC, for plaintiff-appellant.

Thomas W. Watson, Asst. Federal Public Defender (argued and briefed), Nashville, TN, for defendant-appellee.

Gregory D. Smith (briefed), Richardson & Richardson, Clarksville, TN, for Nat. Ass'n of Crim. Defense Lawyers, Amicus Curiae.

Before: MERRITT, Chief Judge; and KEITH, KENNEDY, MARTIN, JONES, MILBURN, GUY, NELSON, RYAN, BOGGS, NORRIS, SUHRHEINRICH, SILER, and BATCHELDER, Circuit Judges.

RALPH B. GUY, Jr., Circuit Judge.

We voted to consider this case *en banc* to decide whether a defendant may challenge at sentencing a prior state court conviction not previously ruled invalid which would result in a longer sentence if included within the sentencing guidelines calculus.[1] We conclude that a narrow window of challenge to prior convictions is available, and in this opinion we set forth the considerations that should inform a sentencing court's disposition of such a challenge. As to defendant McGlocklin's sentence, we conclude that on the evidence presented his prior convictions were valid, and we remand for resentencing.

**I.**

McGlocklin pleaded guilty to two counts of bank robbery in the United States District Court for the Middle District of Tennessee. Defendant had 17 prior state convictions. Several of these prior convictions were not included in the calculation of defendant's sentence because some were outside of the time period allowed, U.S.S.G. § 4A1.2(e), and some resulted from proceedings where defendant was not represented by counsel. However, two of his prior Tennessee state convictions that were counted were for crimes of violence: a conviction for bank robbery pursuant to a guilty plea and a conviction for second-degree burglary pursuant to a *nolo contendere* plea. The presentence report placed defendant in the career offender category due to these two prior convictions. Defendant objected to the classification as a career offender, arguing that his predicate state convictions were invalid because the pleas were not taken in compliance with the requirements of *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23

---

1. While we vacated the panel opinion in *United States v. McGlocklin*, 962 F.2d 551 (6th Cir.), *reh'g en banc granted* (6th Cir. July 21, 1992), we also reserved for *en banc* consideration this single issue in *United States v. Clay*, No. 91–5409, and *United States v. Landrum*, No. 91–5324. With our determination of this issue, *Clay* and *Landrum* are returned to the panels to which they originally were assigned.

L.Ed.2d 274 (1969), and *State v. Mackey,* 553 S.W.2d 337 (Tenn.1977). The district court sustained McGlocklin's objections and did not sentence him under the career offender classification. Instead of a sentencing range of 168–210 months as calculated in the presentence report, the district court computed a range of 77–96 months, sentencing McGlocklin to the maximum 96 months. The government appealed.

## II.

█ Under the United States Sentencing Guidelines, prior convictions are used to compute a criminal history score or to place a defendant in the category of a career offender. A defendant's criminal history category is plotted against the offense level for the crime charged to yield the applicable sentencing range. Section 4A1.1 of the guidelines provides the method for calculating a defendant's criminal history score, while section 4B1.1 defines a career offender.[2] The definitions and instructions for computing a defendant's criminal history contained in section 4A1.2 apply to calculations under both sections 4A1.1 and 4B1.1.

Much of the argument in this case revolves around the 1990 amendments to the sentencing guidelines, specifically to Application Note 6 and the background note of section 4A1.2. The earlier version of Application Note 6 read in full:

*Invalid Convictions.* Sentences resulting from convictions that have been reversed or vacated because of errors of law, or because of subsequently-discovered evidence exonerating the defendant, are not to be counted. Any other sentence resulting in a valid conviction is to be counted in the criminal history score. *Convictions which the defendant shows to have been constitutionally invalid may not be counted in the criminal history score.* Also, if to count an uncounseled misdemeanor conviction would result in the imposition of a sentence of imprisonment under circumstances that would violate the United

States Constitution, then such conviction shall not be counted in the criminal history score. Nonetheless, any conviction that is not counted in the criminal history score may be considered pursuant to § 4A1.3 if it provides reliable evidence of past criminal activity.

U.S.S.G. § 4A1.2, comment. (n. 6) (1989) (emphasis added). Every court that addressed the issue, including this one, concluded that this application note allowed a district court to entertain challenges to presumptively valid (not previously invalidated) state convictions at sentencing. *United States v. Guthrie,* 931 F.2d 564, 571 (9th Cir.1991); *United States v. Bradley,* 922 F.2d 1290, 1297 (6th Cir.1991); *United States v. Unger,* 915 F.2d 759, 761 (1st Cir.1990), *cert. denied,* 498 U.S. 1104, 111 S.Ct. 1005, 112 L.Ed.2d 1088 (1991); *United States v. Edwards,* 911 F.2d 1031, 1035 (5th Cir.1990); *United States v. Wildes,* 910 F.2d 1484, 1485 (7th Cir.1990); *United States v. Jones,* 907 F.2d 456, 463 (4th Cir.1990), *cert. denied,* 498 U.S. 1116, 111 S.Ct. 1028, 112 L.Ed.2d 1109 (1991); *United States v. Dickens,* 879 F.2d 410, 411 (8th Cir.1989); *see also United States v. Cornog,* 945 F.2d 1504, 1511 (11th Cir.1991) (collecting cases).

█ Effective November 1, 1990, Application Note 6 was amended to read:

*Reversed, Vacated, or Invalidated Convictions.* Sentences resulting from convictions that have been reversed or vacated because of errors of law, or because of subsequently-discovered evidence exonerating the defendant, are not to be counted. *Also, sentences resulting from convictions that a defendant shows to have been previously ruled constitutionally invalid are not to be counted.* Nonetheless, the criminal conduct underlying any conviction that is not counted in the criminal history score may be considered pursuant to § 4A1.3 (Adequacy of Criminal History Category).

U.S.S.G. § 4A1.2, comment. (n. 6) (1990) (emphasis added). Thus, the current version of Application Note 6 to section 4A1.2 makes

---

**2.** Under section 4B1.1, "[a] defendant is a career offender if (1) the defendant was at least eighteen years old at the time of the instant offense, (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense, and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense."

clear that a district court is not to count convictions which have been previously ruled invalid. The application note does not address whether a conviction that has not been previously ruled invalid can be challenged at sentencing. However, when the Sentencing Commission amended Application Note 6 to section 4A1.2, it added a background note to that same section which 13 reads: "The Commission leaves for court determination the issue of whether a defendant may collaterally attack at sentencing a prior conviction." U.S.S.G. § 4A1.2, comment. (backg'd). The Sentencing Commission explained that the amendment "clarifies the circumstances under which prior sentences are excluded from the criminal history score." U.S.S.G.App.C, amend. 353.

### III.

The Supreme Court has not addressed the impact of these amendments,[3] but we are not the first circuit to consider the issue. The Second, Third, and Fifth Circuits [4] have read the background note to recognize the authority of federal district courts to entertain first-instance collateral attacks on presumptively valid prior state convictions at sentencing. *United States v. Brown*, 991 F.2d 1162 (3d Cir.1993); *United States v. Canales*, 960 F.2d 1311, 1315 (5th Cir.1992); *United States v. Jakobetz*, 955 F.2d 786, 805 (2d Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 104, 121 L.Ed.2d 63 (1992). In *Jakobetz*, the court summarized the effect of these guidelines:

> While defendants may always present the sentencing court with evidence that another court has ruled their prior convictions invalid and hence unsuitable for consideration as part of the criminal history score

at sentencing, the court also retains discretion to determine whether a defendant may mount an initial challenge to the validity of such convictions.

*Jakobetz.*, 955 F.2d at 805.

The First, Fourth, Eighth, and Eleventh Circuits have concluded that sentencing courts are required to entertain at least some kinds of attacks on prior convictions and that the authorization for such examinations comes not from the sentencing guidelines but from the Constitution. *United States v. Isaacs*, No. 92–2068, 1993 WL 210537, 1993 U.S.App. LEXIS 14892 (1st Cir. June 22, 1993); *United States v. Byrd*, 995 F.2d 536 (4th Cir.1993); *United States v. Elliott*, 992 F.2d 853 (8th Cir.1993); *United States v. Roman*, 989 F.2d 1117 (11th Cir.1993) (*en banc* ). In *Roman*, the first case to take this approach, the defendant objected to the use of a prior conviction because it was based on an unconstitutional guilty plea. Defendant alleged that the plea was not made knowingly and intelligently because he does not speak English and there was no interpreter at the plea hearing. The only proof offered to support his claim was a summary of the state proceedings. After concluding that "[n]o language now in Note 6 authorizes collateral review," *id.* at 1119, the court explained that the background comment "recognizes that—apart from the sentencing guidelines—the Constitution bars federal courts from using certain kinds of convictions at sentencing." *Id.* The court concluded that the Constitution requires a sentencing court to review a prior conviction only when a defendant "sufficiently asserts facts that show that an earlier conviction is 'presumptively void'...." *Id.* at 1120. Explaining

---

3. Recently, the Court addressed the constitutionality of Kentucky's procedure for allowing collateral attacks during sentencing, yet specifically declined to address whether due process requires a state court to permit challenges to prior convictions based on guilty pleas used for enhancement purposes. *Parke v. Raley*, —— U.S. ——, —— ——, 113 S.Ct. 517, 522–23, 121 L.Ed.2d 391 (1992).

4. In considering the circuits that have addressed this issue, we have not referenced the panel opinion in *United States v. Hoffman*, 982 F.2d 187 (6th Cir.1992), for two reasons. First, the pronouncements in *Hoffman* concerning the

1990 amendments came only *after* the court had specifically ruled "that applying the amended Application Note 6 to Hoffman would cause an *ex post facto* problem." *Id.* at 190 (footnote omitted). Therefore, the opinion expressed on the amended version of the guidelines would appear to be dicta. Second, we agree with the view expressed in the dissent in that case. *Hoffman* was issued December 22, 1992, less than two weeks after this *en banc* court heard arguments in the present case, and the "collateral attack" issue should have been reserved since its outcome would be controlled by our *en banc* decision.

that the number of convictions that could be termed "presumptively void" is small, the court held that the evidence offered to support defendant's challenge was insufficient to warrant a hearing.

The First Circuit expressly followed the approach adopted by the *Roman* court. *Isaacs,* 1993 WL 210537, 1993 U.S.App. LEXIS 14892. In *Isaacs,* the court examined the question of what kinds of convictions are "presumptively void," concluding that the test "is whether a constitutional violation can be found on the face of the prior conviction, without further factual investigation." *Id.* at *6, 1993 U.S.App. LEXIS 14892, at *19. The court stated that "unless a defendant's claim is that a prior conviction is unconstitutional on its face, the sentencing court has no constitutional authority to review that conviction before using it to enhance a defendant's Criminal History Category." *Id.* at *6, 1993 U.S.App. LEXIS 14892, at *20. The court then concluded that because Isaacs' claim of ineffective assistance of counsel required the district court to conduct a factual investigation, the conviction did not meet the "presumptively void" test. *Id.*

In *Elliott,* the defendant challenged the use of several prior convictions, "alleging that the prior convictions were constitutionally invalid because the state courts failed to conduct competency hearings before accepting a guilty plea or empanelling a jury, thus violating *Pate v. Robinson,* 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966)." *Elliott,* 992 F.2d at 854. Elliott argued that applying the guidelines in such a way as to prohibit him from collaterally attacking these prior convictions was unconstitutional. The court first determined that interpreting the new amendments to prohibit collateral attacks at sentencing was consistent with the Sentencing Commission's statutory mandate and that the courts must follow this approach "except when the Constitution requires that a collateral attack at sentencing be permitted." *Id.* at 856. Turning to the constitutional question, the Eighth Circuit concluded that it was not unconstitutional to apply Application Note 6 to bar the defendant's challenge. The court emphasized that the defendant had "not argued that the collateral attack he

seeks is necessary to prevent the 'erosion' of *Pate v. Robinson,* nor has he shown that his sentence was based upon 'misinformation of constitutional magnitude.'" *Id.* at 857.

The Fourth Circuit, the most recent circuit to rule on this issue, has articulated a limited category of constitutional challenges that a district court is obligated to entertain. *Byrd,* 995 F.2d 536 (discussed further in section IV *infra* ).

The only court to conclude that district courts are completely prohibited from considering challenges to prior convictions that have not been previously ruled invalid was the United States District Court for the District of Oregon. *United States v. Avery,* 773 F.Supp. 1400 (D.Or.1991). After an extensive review of the cases under the old version of Application Note 6, the court concluded that the new version precluded it from entertaining the defendant's challenge. In *Avery,* the court held that if the conviction sought to be excluded from the criminal history score had not been previously determined to be constitutionally invalid, then "the appropriate procedure is for the defendant to file a petition for a correction of this sentence pursuant to § 2255 following a determination that the conviction was unconstitutionally obtained." *Id.* at 1408.

The Ninth Circuit subsequently addressed this issue in *United States v. Vea–Gonzales,* 986 F.2d 321 (9th Cir.1993). In *Vea-Gonzales,* the United States District Court for the District of Oregon, relying on its opinion in *Avery,* had denied defendant's motion for a hearing to collaterally attack a prior federal conviction on the grounds of ineffective assistance of counsel. *Id.* at 325. The Ninth Circuit vacated the defendant's sentence and remanded, finding that the district court should have entertained defendant's challenge because "the Constitution requires that defendants be given the opportunity to collaterally attack prior convictions which will be used against them at sentencing." *Id.* at 327.[5] Although the Ninth Circuit has joined those circuits that allow constitutional challenges to prior convictions at sentencing, it has given defendants an unfettered right to

---

5. Now that the Ninth Circuit has overruled the holding in *Avery,* there is no circuit that currently adheres to the absolute prohibition position urged by Judge Ryan.

raise such challenges to presumptively valid prior convictions.[6]

Under the current version of the sentencing guidelines, a district court is required to exclude from the criminal history score any conviction that the defendant shows to have been previously ruled invalid. In addition, we conclude the district court has the discretion to exclude from consideration other challenged convictions under certain limited circumstances.[7] While we recognize inherent limits on the power to entertain collateral attacks, we are convinced that a challenge to a conviction for purposes of excluding it from consideration at sentencing is not equivalent to a full-blown collateral attack. In a full collateral attack, if the defendant is successful, the defendant's conviction is vacated for all purposes.

The government and Judge Ryan, in his dissent, maintain that allowing any collateral challenges at sentencing would violate the Full Faith and Credit Clause and would offend traditional notions of comity. We agree with the Ninth Circuit that "doctrines such as Full Faith and Credit, collateral estoppel and res judicata, and related jurisdictional principles based on comity concerns, are inapplicable in this context, where the issue is the role of prior state convictions in a federal sentencing scheme." *Guthrie*, 931 F.2d at 571; *see also Isaacs*, 1993 WL 210537, *8, 1993 U.S.App. LEXIS 14892, *13 n. 6 ("'[C]omity' considerations are absent (or less weighty) . . . when a federal court refuses to rely on a state conviction as a basis for imposing a federal sentence for a federal crime.") (quoting *United States v. Paleo*, 967 F.2d 7, 12 (1st Cir.1992)). A defendant's successful challenge to a prior conviction at a federal sentencing hearing involving a subsequent federal crime would result only in precluding the use of that conviction in determining the appropriate sentence for the crime at issue. The state conviction is not invalidated. Any determination made by the sentencing court regarding the use of that prior conviction for sentencing purposes would have no preclusive effect on any other court that may in the future have reason to consider that conviction's validity in an unrelated proceeding. *United States v. Mims*, 928 F.2d 310, 312 (9th Cir.1991); *see also United States v. Brown*, 991 F.2d at 1167 n. 3 (because state in which prior conviction was obtained is not a party to federal criminal proceedings, "state will not be bound by the" district court's determination of the constitutionality of the prior conviction).

While we do not believe that the Full Faith and Credit Clause is implicated, we would point out that many states allow collateral attacks to be made at sentencing on prior state convictions. *See, e.g.,* D.C.Code Ann. § 23–111(c); *Parke v. Raley,* —— U.S. ——, 113 S.Ct. 517, 121 L.Ed.2d 391 (1992) (discussing with approval Kentucky's procedure for allowing collateral attacks at sentencing). Inasmuch as the Full Faith and Credit Clause only requires that we give such deference to a state judgment as the state would give that judgment, the approach we adopt today is not violative of Full Faith and Credit Clause principles. Judge Ryan's suggestion that states that allow defendants to challenge prior convictions for the first time at sentencing only allow challenges to convictions from their own state is not correct. For example, in *Raley*, the Supreme Court approved Kentucky's procedure for allowing such challenges without even mentioning any full faith

---

6. This essentially is the view espoused by Judge Martin in his dissent.

7. We do not mean to suggest that the power of the court to act is derived from the background note or that the guidelines give the district courts discretion to entertain collateral attacks, *see Vea-Gonzales,* 986 F.2d at 327, but rather, the background note acknowledges the inherent power of the court to determine whether collateral attacks at sentencing should be allowed. The Sentencing Commission has expressly addressed this in a recently proposed amendment that would change Application Note 6. The new version would delete the sentence referring to convictions that a

defendant shows to have been previously ruled constitutionally invalid and would add: "With respect to the current sentencing proceeding, this guideline or commentary does not confer upon the defendant any right to attack collaterally a prior conviction or sentence beyond any such rights otherwise recognized in law (e.g., 21 U.S.C. § 851 expressly provides that a defendant may collaterally attack certain prior convictions)." 58 Fed.Reg. 27148, 27160 (proposed May 6, 1993). This amendment is scheduled to become effective on November 1, 1993, absent action of Congress to the contrary.

and credit concerns. While it is unclear if Raley's prior convictions were from the State of Kentucky, the Court explored the genesis of Kentucky's procedure, including *Commonwealth v. Gadd,* 665 S.W.2d 915 (Ky.1984), which had involved a challenge to a prior Ohio conviction. In *Raley,* the Supreme Court noted that in *Gadd* the Kentucky Supreme Court had read *Burgett v. Texas,* 389 U.S. 109, 88 S.Ct. 258, 19 L.Ed.2d 319 (1967), as requiring courts to permit attacks on the validity of prior convictions. *Raley,* —— U.S. at ——, 113 S.Ct. at 520. The Court held that Kentucky's procedure of placing the burden on the defendant of showing the unconstitutionality of the prior conviction "easily passes constitutional muster." *Id.* —— U.S. at ——, 113 S.Ct. at 522. By implication, the Supreme Court's decision in *Raley,* approving of a particular procedure for challenges, approves of allowing challenges to prior convictions as not violative of the Full Faith and Credit Clause or statute.

A district "court, in determining the particular sentence to be imposed, shall consider— (1) the nature and circumstances of the offense and the history and characteristics of the defendant...." 18 U.S.C. § 3553(a). A defendant's "history" includes the defendant's criminal history. *See United States v. Byrd,* 984 F.2d 251, 252 (8th Cir.1993). A sentencing judge is required to base the determination of the proper sentence on reliable information. Conversely, a sentencing judge must disregard evidence which is untrustworthy or unreliable. Thus, a sentencing judge must have some discretion to entertain a defendant's claim that a prior conviction should not be counted. The Supreme Court has held that a sentence cannot be based on "misinformation of a constitutional magnitude." *United States v. Tucker,* 404 U.S. 443, 447, 92 S.Ct. 589, 592, 30 L.Ed.2d 592 (1972). In *Tucker,* the defendant's prior convictions were unconstitutional under *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963). The Court concluded that " '[t]o permit a conviction obtained in violation of *Gideon v. Wainwright* to be used against a person either to support guilt or enhance punishment for another offense ... is to erode the principle of that case.' " *Tucker,* 404 U.S. at 443, 92 S.Ct. at

590 (citing *Burgett v. Texas,* 389 U.S. 109, 114, 88 S.Ct. 258, 262, 19 L.Ed.2d 319 (1967)). In *Burgett,* the Court concluded that to allow the admission of a prior conviction obtained in violation of *Gideon* meant that "petitioner's right to counsel, a 'specific federal right,' is being denied anew." *Burgett,* 389 U.S. at 116, 88 S.Ct. at 262.

Completely denying a district court the discretion to consider a defendant's challenge to a prior conviction, regardless of the underpinnings of such a challenge, would be at odds with the Court's decisions in *Burgett* and *Tucker.* The government, recognizing that under *Burgett* and *Tucker* at least some challenges must be permitted, proposes to limit the challenges allowed to only claims that a prior conviction is constitutionally infirm under *Gideon.* But there are other equally egregious situations where a "federal right is being denied anew." The Supreme Court, in discussing the application of the harmless error rule, recognized there are some basic protections in the trial process— the right to counsel, freedom from the introduction of coerced confessions, and resolution by an unbiased adjudicator—that must be afforded a criminal defendant. *Rose v. Clark,* 478 U.S. 570, 577, 106 S.Ct. 3101, 3105–06, 92 L.Ed.2d 460 (1986). "Without these basic protections, a criminal trial cannot *reliably* serve its function as a vehicle for determination of guilt or innocence...." *Id.* at 577–78, 106 S.Ct. at 3106 (emphasis added).

Nowhere has the Supreme Court indicated that the rule in *Burgett* and *Tucker* is limited to only uncounseled felony convictions violative of *Gideon.* Indeed, the language in *Burgett,* that a "specific federal right" would be "denied anew" if a conviction obtained in violation of *Gideon* were used against a defendant to enhance punishment for another offense, was explicitly taken from *Spencer v. Texas,* 385 U.S. 554, 87 S.Ct. 648, 17 L.Ed.2d 606 (1967). In *Spencer,* the defendant argued that he was prejudiced in the guilt determination phase of the trial by the introduction of evidence of prior crimes. In finding the procedure employed constitutional, the Court stated: "In the procedures before us ... no specific federal right—such as that

dealing with confessions—is involved...." *Id.* at 565, 87 S.Ct. at 654. Thus, the Court in *Burgett,* implicitly at least, was referring to other contexts where the use of a prior conviction might result in "denying anew" a "specific federal right." *Burgett,* 389 U.S. at 116, 88 S.Ct. at 262. Additionally, in 1983 the Supreme Court noted that a "sentence must be set aside if the trial court relied at least in part on 'misinformation of constitutional magnitude' such as prior uncounseled convictions...." *Zant v. Stephens,* 462 U.S. 862, 887 n. 23, 103 S.Ct. 2733, 2748 n. 23, 77 L.Ed.2d 235 (1983). The phrase "such as" implies that the court does not consider convictions violative of *Gideon* to be the only types of prior convictions that must be excluded for sentencing enhancement purposes.

While Judge Ryan characterizes a defendant's challenge to a prior conviction at sentencing as an attempt to *invalidate* that conviction, such is not our view. We emphasize that the "collateral attack" we sanction is *not* one which would result in a prior conviction being invalidated. Rather, we intend that the matter of prior convictions be handled as the trial judge handles all other *contested* matters at sentencing. The judge makes a determination as to whether the challenged evidence is trustworthy enough to be used to enhance a defendant's sentence. That is as far as it goes.

The government contends that allowing challenges at sentencing will cause sentencing proceedings to take on a life of their own, consuming judicial resources and prolonging the sentencing process. We disagree. First, historically, before there were guidelines and under the old version as well as the new version of the guidelines, such attacks were and are regularly entertained, and the district courts seem to handle the task without an inordinate consumption of judicial re-

sources or delays in sentencing. Second, we believe that the procedures we establish will not result in an unmanageable enlargement of the sentencing process. *See infra* part IV. For example, we are not requiring that anytime a defendant raises a challenge to a previous conviction a district court must hold an evidentiary hearing. Third, the approach urged by Judge Ryan would be an extremely complicated method for resolving what may be a fairly simple challenge. A defendant first would be sentenced by the federal court counting the prior conviction in the criminal history score. The defendant then would need to exhaust any state post-conviction remedies. Then, once the exhaustion requirements were fulfilled, presuming the defendant did not prevail, defendant would then proceed to file a § 2254 petition.[8] If successful at any stage, the defendant finally would need to file a § 2255 motion to correct the federal sentence. This approach would cause a new wave of habeas petitions and "runs counter to basic concerns for judicial economy." *United States v. Jones,* 977 F.2d 105, 110 (4th Cir.1992), *cert. denied,* — U.S. —, 113 S.Ct. 1335, 122 L.Ed.2d 719 (1993). While under this approach a minimum amount of time is spent at the sentencing hearing, it could be years before a defendant's challenge is out of the courts.

## IV.

Having concluded that under certain limited circumstances it is within a sentencing court's discretion to entertain a challenge to the inclusion of a prior state conviction in a criminal history score, we now turn to the considerations that should inform a sentencing court in disposing of such challenges. Certain difficulties exist in allowing an attack at the sentencing hearing, including "the absence of the sentencing state as a party,

---

8. It is not clear whether defendants in such a position would have the right to bring a habeas petition challenging their prior conviction if the sentence under that conviction already has been completed. *Maleng v. Cook,* 490 U.S. 488, 492, 109 S.Ct. 1923, 1926, 104 L.Ed.2d 540 (1989) (a person does not meet the "in custody" requirement if the sentence under the conviction the person wishes to challenge has expired and is being used only for enhancement). However, several courts have ruled that the *Maleng* deci-

sion does not prevent a person from challenging a sentence currently being served on the grounds that it was enhanced based on an unconstitutional prior conviction. *Collins v. Hesse,* 957 F.2d 746, 748 (10th Cir.1992) (collecting cases); *Lowery v. United States,* 956 F.2d 227, 229 (11th Cir.1992) (collecting cases). We express no opinion on whether or to what extent a defendant, whose sentence under a prior conviction has expired but is being used for enhancement, may seek relief under § 2254 or § 2255.

possible staleness of the claims, the inadequacy or unavailability of state court records and witnesses from 'far-flung jurisdictions,' and the danger of 'unduly protracted or delayed sentencing.' " *Jones,* 977 F.2d at 109 (citation omitted). It must be remembered that, by definition, the conviction challenged is one that has not been previously adjudicated invalid.

> Ordinarily that will be so because of a failure by the federal defendant to have attempted the attack, or because of his failure to have succeeded if he made the attempt. And ordinarily—though not necessarily—a failure to have made the attempt will bespeak a recognized lack of basis for doing so, thus raising in question the basis now claimed for making the attempt in an even more attenuated collateral setting.

*Id.*

To challenge the proposed use of a prior conviction for sentencing purposes, the defendant must first comply with the procedural requirements for objecting to the conviction's inclusion in the criminal history score. The defendant also must state specifically the grounds claimed for the prior conviction's constitutional invalidity in his initial objection and "the anticipated means by which proof of invalidity will be attempted—whether by documentary evidence, including state court records, testimonial evidence, or combination—with an estimate of the process and the time needed to obtain the required evidence." *Id.* at 110. *See also Canales,* 960 F.2d at 1316 (the district court is free to consider a number of factors including scope of inquiry, whether issue is contested, and if invalidity is apparent from record). An example of a challenge that a court should entertain would be a challenge to a previously unchallenged felony conviction where the defendant was not represented by counsel, counsel was not validly waived, and court records or transcripts are available that document the facts. As the Supreme Court recently has made clear, "even when a collateral attack on a final conviction rests on constitutional grounds, the presumption of regularity that attaches to final judgments makes it appropriate to assign a proof burden to the defen-

dant." *Raley,* —— U.S. at ——, 113 S.Ct. at 524; *see also United States v. French,* 974 F.2d 687, 701 (6th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1012, 122 L.Ed.2d 160 (1993).

In addition to the types of proof that will be offered, the court also should consider whether the defendant has available an alternative method for attacking the prior conviction either through state post-conviction remedies or federal habeas relief. While this factor should not be dispositive of whether a sentencing court should entertain such a challenge, the availability of an alternative method should play a significant role in the court's decision. "The fact that traditional habeas or post-conviction remedies have been—and especially if they remain—available to the defendant, obviously bears heavily—indeed, could be decisive—on whether to entertain, then to uphold, a first-instance challenge at sentencing." *Jones,* 977 F.2d at 110.

The Fourth Circuit, which first articulated the factors to be considered in the exercise of the district court's discretion under the prior version of the guidelines, *see Jones,* 977 F.2d 105, has recently formulated a test for challenges to prior convictions under the current guidelines. Under the Fourth Circuit's current approach, "district courts are obliged to hear constitutional challenges to predicate state convictions in federal sentencing proceedings only when prejudice can be presumed from the alleged constitutional violation, regardless of the facts of the particular case; and when the right asserted is so fundamental that its violation would undercut confidence in the guilt of the defendant." *Byrd,* 995 F.2d at 540 (quoting *United States v. Custis,* 988 F.2d 1355, 1362 (4th Cir.1993) (decided in the context of statutory sentencing under 18 U.S.C. § 924(e))). While *Byrd* held that the opinion in *Jones* was not controlling because of the change in the language of the sentencing guidelines, the approach it has adopted appears similar to the approach in *Jones* depending upon how one interprets "when prejudice can be presumed" and "when the right asserted is so fundamental that its violation would undercut confidence in the guilt of the defendant."

We do not view the rule espoused here to be significantly different from that put forth in *Byrd*. We have spoken of the district court's duty at sentencing, where the judge determines both factual and legal issues, to monitor for trustworthiness. We see little difference, if any, between that formulation and *Byrd*'s dictate that prior convictions should not be utilized when they appear to result from a "violation [that] would undercut confidence in the guilt of the defendant."

## V.

 Having determined that a district court has limited discretion to exclude certain prior state convictions, we turn to the facts of McGlocklin's case.[9] The district court ruled that defendant was not subject to career offender enhancement under the United States Sentencing Guidelines because his two predicate state felony convictions were invalid. We find that, while it was within the district court's discretion to entertain defendant's challenge, the district court employed the wrong legal standard in reviewing his convictions. Under the correct legal standard, the defendant's convictions are valid.[10]

Defendant had several prior convictions, but we are concerned with only two—the two that resulted in the presentence report classifying him as a career offender. The first of those two convictions was based upon defendant's guilty plea to bank robbery in the Criminal Court of Davidson County, Tennessee, on May 25, 1985. The second was based on defendant's plea of *nolo contendere* to second-degree burglary in the Criminal Court of Cheatham County, Tennessee, on

July 12, 1985. McGlocklin argued that these two convictions were invalid because the pleas were not taken in compliance with Tennessee law under *State v. Mackey*, 553 S.W.2d 337 (Tenn.1977), or with the requirements of the Constitution as expressed in *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). The district court reviewed the transcripts of defendant's state court plea proceedings and concluded that the convictions were invalid as a matter of state law under *State v. Mackey*[11] and invalid as a matter of federal law under *Boykin v. Alabama*.

In ruling that the convictions were invalid as a matter of state law, and thus could not form the basis for applying the career offender provision of section 4B1.1 or be included in the computation of the defendant's criminal history category, the district court relied on *United States v. Bradley*, 922 F.2d 1290 (6th Cir.1991). In *Bradley*, the defendant challenged the inclusion of a prior conviction in his criminal history score on the same grounds McGlocklin advances. A panel of this court held that the validity of the defendant's guilty plea was governed by Tennessee law in effect at the time the defendant entered his plea, and, because the record did not indicate compliance with the requirements of *Mackey*, the panel remanded the case for resentencing at the lower criminal history category. *Id.* at 1297–98.

The sentencing guidelines make no reference to allowing a defendant to challenge a prior state conviction on the grounds that it is invalid as a matter of *state* law. To the contrary, the sentencing guidelines make reference to only "constitutionally invalid" con-

---

9. We need not address defendant's argument that the application of the new sentencing guidelines is a violation of the Ex Post Facto Clause because his crime was committed prior to the effective date of the amendment but he was sentenced after the effective date. Given our interpretation of the impact this amendment has on the discretion a district court has to consider the validity for sentencing purposes of a prior state conviction, and the fact that the district court was within its discretion in entertaining McGlocklin's challenge, the Ex Post Facto Clause is not implicated.

10. Although the original panel opinion in this case has been vacated, the analysis contained in

part V tracks the analysis used by the panel, including the use of the same language without further attribution.

11. Under *Mackey*, for a plea to be valid in Tennessee, a court must inform the defendant of and determine that he understands the nature of the charge; the minimum and maximum penalties; his right to an attorney; his right to plead not guilty; his right to a jury trial and right to be assisted by counsel at trial; his right to confront and cross-examine witnesses; his right not to be compelled to incriminate himself; that, if he pleads guilty, he waives the right to a trial; and that, if he pleads guilty, evidence of prior convictions may be used against him for sentencing.

victions. This approach is consistent with the existing law as it has developed in federal habeas corpus proceedings. Thus, to the extent that *Bradley* held that the validity of a prior state conviction challenged at a sentencing hearing is determined as a matter of state law, *Bradley* is overruled. When the inclusion of a prior state conviction in the criminal history score is challenged, the validity of that conviction must be determined solely as a matter of federal law.

Additionally, the Tennessee Supreme Court recognized that the origin of the procedures set forth in *Mackey* was in both constitutional requirements and the supervisory authority of the Tennessee Supreme Court. *State v. Neal*, 810 S.W.2d 131, 137 (Tenn. 1991). The Tennessee Supreme Court further stated that omissions of state requirements, as opposed to constitutional requirements, may be reviewed only upon direct appeal and may not be the basis of post-conviction relief. *Id.* at 139. We therefore turn to the constitutional arguments urged by the defendant.

■ The district court seemed to conclude that, because the requirements of *Mackey* were not fulfilled, the plea was taken in violation of due process and thus was constitutionally invalid. However, "[t]he applicable standard for determining the validity of guilty pleas under due process was set forth in *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969)." *Riggins v. McMackin*, 935 F.2d 790, 795 (6th Cir. 1991). A guilty plea acts as a waiver of several federal constitutional rights; therefore, in order to be valid, a guilty plea must be entered intelligently and voluntarily. *Boykin*, 395 U.S. at 242, 89 S.Ct. at 1711–12. Voluntariness is determined by considering all relevant circumstances surrounding the guilty plea. *Brady v. United States*, 397 U.S. 742, 749, 90 S.Ct. 1463, 1469, 25 L.Ed.2d 747 (1970). A plea may be involuntary if the defendant does not understand the nature of the constitutional rights he is waiving, or unintelligent if the defendant does not understand the charge against him. *Henderson v. Morgan*, 426 U.S. 637, 645 n. 13, 96 S.Ct. 2253, 2257 n. 13, 49 L.Ed.2d 108 (1976).

■ We find that defendant's Cheatham County *nolo contendere* plea was valid under constitutional standards. The judge asked defendant if his lawyer had explained the charge against him and if he understood the charge. Defendant responded that the charge had been explained and that he understood it. A representation on the record that defense counsel has explained the charge is sufficient to show that the defendant had notice of the nature of the charge against him. *Marshall v. Lonberger*, 459 U.S. 422, 436, 103 S.Ct. 843, 851–52, 74 L.Ed.2d 646 (1983). The judge also asked defendant if his lawyer had told him the range of punishment for the crime. Defendant responded in the affirmative. We find that these exchanges, on the record, are sufficient to conclude that defendant was aware of the nature of the charge against him and the potential penalties he faced. Nowhere in the record before this court does defendant state that he was actually unaware of any of this information or that his plea was not voluntary. We find the entire record of the plea proceedings in Cheatham County sufficient to show that defendant was aware of his constitutional rights and his plea was entered voluntarily and intelligently.

■ Defendant argues that his plea was invalid because the judge did not find a factual basis for his plea. The judge did not establish on the record the facts of the burglary for which defendant was charged. While it is advisable to conduct an on-the-record inquiry into the factual basis for a plea, the failure of a state trial judge to do so will not serve as a basis for habeas relief; similarly, such a failure will not serve as a basis for a collateral attack at sentencing. This circuit has long recognized that, absent special circumstances, "there is no constitutional requirement that a trial judge inquire into the factual basis of a plea." *Roddy v. Black*, 516 F.2d 1380, 1385 (6th Cir.), *cert. denied*, 423 U.S. 917, 96 S.Ct. 226, 46 L.Ed.2d 147 (1975). "The defendant does not necessarily need to be told the nature of the offense and elements of the crime at the actual plea proceedings; a knowing and intelligent guilty plea may be entered on the basis of the receipt of this information, generally from defense counsel, before the plea

proceedings." *Stano v. Dugger*, 921 F.2d 1125, 1142 (11th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 116, 116 L.Ed.2d 85 (1991). Looking at the record of the plea proceedings as a whole, we find that the judge's failure to establish the facts on the record did not prevent defendant from making a voluntary and intelligent plea.

Defendant also challenges his Davidson County plea. During the plea proceeding, the judge asked McGlocklin if he had heard all the constitutional rights that were explained to another defendant who was to enter a plea immediately preceding McGlocklin. Defendant stated that he had heard his rights and that he understood them. The judge then quickly reviewed defendant's rights with him. The judge placed on the record the facts of the bank robbery with which the defendant was charged. Defendant stated that the facts were true and that there was nothing that he would add or delete from the facts. Nowhere in the record before us does defendant allege that his plea was in fact involuntary or unintelligent. He relies solely on the asserted inadequacy of the plea colloquy. We find from the record of the plea proceedings that defendant's guilty plea was voluntary and intelligent.

Accordingly, we conclude that defendant's prior convictions should be included in the sentencing calculus.

**REVERSED** and **REMANDED** for further proceedings consistent with this opinion.

KEITH, Circuit Judge, concurring.

The majority states that district courts have the discretion under the current Sentencing Guidelines to consider a defendant's challenges to prior convictions. I agree with that proposition and the majority's determination that defendant McGlocklin's prior convictions are valid. However, I write separately to address two matters of concern regarding the majority opinion. First, I believe the majority should have considered this Court's decision in *United States v. Hoffman*, 982 F.2d 187 (6th Cir.1992), in reaching its decision. Second, I disagree with the limitations the majority imposes on a district court's ability to exercise its discretion in considering challenges to prior convictions.

**I.**

In *Hoffman*, a panel of this Court addressed the question of how district courts should handle challenges to prior convictions under the current Sentencing Guidelines. The *Hoffman* Court held that the November 1990 amended versions of Application Note 6 and the Background Note to § 4A1.2 of the Guidelines give district courts the discretion to determine whether a defendant may collaterally attack the use of prior convictions at sentencing in instances where the defendant has not previously challenged the prior convictions. The *Hoffman* Court stated:

> This Circuit has not previously decided the effect of the amended versions of Application Note 6 and the Background Note to U.S.S.G. § 4A1.2 as they apply to collateral attacks to prior convictions. However, we adopt the view of the Second, Fifth, Eleventh, and Ninth Circuits that it is within a district court's discretion to determine whether a defendant may collaterally attack the use of prior convictions at sentencing where the defendant has not previously challenged the convictions.

982 F.2d at 190 (footnote omitted). In *Hoffman*, we quoted with approval *United States v. Cornog*, 945 F.2d 1504, 1511 (11th Cir. 1991), where the Eleventh Circuit wrote:

> A 1990 amendment to application note 6 . . . clarifies that a district court may never count convictions previously held invalid in sentencing a defendant, but that it has discretion to conduct a collateral inquiry to determine whether challenged convictions, which the defendant has not previously contested, are invalid and, hence, must be ignored.

982 F.2d at 190.

Prior to the instant decision, *Hoffman* was the only published decision in this Circuit that addressed the issue of a district court's discretion to consider challenges to prior convictions under the 1990 amended version of the Guidelines. I read the majority's opinion in *McGlocklin* as being generally consistent with *Hoffman* on this issue.

## II.

I disagree and am concerned with the majority's attempt to provide guidance to district courts regarding the breadth of their discretion to consider challenges to prior convictions. In adopting a brightline test to aid trial judges' exercise of discretion, the majority states: "district courts are obliged to hear constitutional challenges to predicate state convictions in federal sentencing procedures only when prejudice can be presumed from the alleged constitutional violation, regardless of the facts of the particular case; and when the right asserted is so fundamental that its violation would undercut confidence in the guilt of the defendant." (Majority Opinion at page 1045).

The majority requires that defendants "state specifically the grounds claimed for the prior conviction's invalidity in his initial objection and the 'anticipated means by which proof of invalidity will be attempted—whether by documentary evidence, including state court records, testimonial evidence, or combination—with an estimate of the process and the time needed to obtain the required evidence.'" (Majority Opinion at page 1045) (citations omitted). Thus, the majority provides at least one mandatory factor which the trial judge must consider. Additionally, the majority writes that district courts "should consider whether the defendant has available an alternative method of attacking the prior conviction either through state post-conviction remedies or federal habeas relief." (Id. at 1045). The majority further notes this factor "should not be solely dispositive" but "should play a significant role" in the court's exercise of its discretion. (Id.). Finally, the majority furnishes an example of a challenge a district court should entertain as an "unchallenged felony conviction where the defendant was not represented by counsel, counsel was not validly waived, and court records or transcripts are available to document the facts." (Majority Opinion at page 1045).

Anticipating precise facts and circumstances under which a defendant may seek to challenge the validity of prior convictions is nearly impossible and is a matter which should rest entirely within the discretion of the trial judge. In the instant case, the majority illegitimately attempts to define the parameters of a district court's discretion to hear such challenges.[1] By mandating factors and furnishing an example of an "appropriate" challenge for consideration, the majority undermines the very discretion it concludes rests with district courts, diluting trial judge inclination into obscurity. The majority's arrogant usurpation of the trial judge's inherent and historic authority is objectionable, unacceptable, and reflects a lack of trust and deference to our colleagues on the district court. Indisputably, trial judges are best positioned to exercise discretion to entertain challenges to prior convictions.

RYAN, Circuit Judge, dissenting, except in the conclusion reached in Part V of the plurality opinion that the defendant must be resentenced.

Judge Guy's plurality opinion states that the question before us is

> whether a defendant may challenge at sentencing a prior state court conviction not previously ruled invalid which would result in a longer sentence if included within the sentencing guidelines calculus.

Plurality op. at 1038.

The answer, according to the plurality opinion, is that "under certain limited circumstances it is within a sentencing court's discretion to entertain a challenge to the inclusion of a prior state conviction in a criminal history score." Plurality op. at 1044. I had thought, and I believe the parties had thought, that we voted to rehear these cases *en banc* to decide

> whether a federal district court has *authority* under the sentencing guidelines, or otherwise, to invalidate, for federal sentencing purposes, a prior state conviction.

*See United States v. Wolak,* 923 F.2d 1193, 1195 (6th Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 2824, 115 L.Ed.2d 995 (1991).

---

1. District court rulings on whether to hear challenges to prior convictions at sentencing are, in essence, evidentiary rulings subject to review by this Court under an abuse of discretion standard.

For reasons I shall fully develop, my view is that it does not. Therefore, although I concur in the ultimate result reached by the plurality opinion with respect to McGlocklin's sentence, I disagree that federal district courts are authorized to invalidate, for federal sentencing purposes, prior state convictions. I must, therefore, respectfully dissent.

The difference in the two formulations of the issue we convened to decide *en banc* is not, as it turns out, merely a matter of semantics. The rule announced in Judge Guy's plurality opinion is that whether a defendant may or may not "challenge" the use of a prior conviction, that is, obtain a ruling on its use in the sentence calculus, is within the discretion of the sentencing court. Subsumed in that rule of decision is the conclusion that a federal court has authority to hold invalid, for sentencing purposes, a presumptively valid prior state conviction. Indeed, the opinion so holds. *See* plurality op. at 1045. Although the plurality opinion's rule of decision is stated in terms of a threshold procedural question—whether a sentencing court has discretion to consider challenges to the constitutional validity of a prior state conviction—we did not order *en banc* hearing in these cases to decide that question. Our vote, as I understand it, was to consider and decide the substantive question whether federal courts have *authority*, at sentencing, to invalidate presumptively valid prior state convictions. Instead of coming squarely to grips with that difficult and complex problem, and offering a reasoned analysis on the subject, the plurality opinion merely assumes that a federal court has the "inherent power" to invalidate state convictions at sentencing hearings, without, as it turns out, any citation of applicable authority and only passing reference to an analytical basis.

The result is a virtual bypass of the critical question we convened *en banc* to decide and little more than an *ipse dixit* that the court has the "inherent power" to invalidate such convictions.

The plurality fails to inform us from whence the sentencing court derives its authority to adjudicate the validity of prior state convictions. Rather, the plurality apparently assumes that the power is "inherent." *See* plurality op. at 1042 n. 7. No circuit that has addressed the subject agrees with the view implied in the plurality opinion that the court's "inherent power" is the source of a federal sentencing court's authority to invalidate a state conviction. At least three circuits have concluded that the sentencing guidelines are the source[1] or lack of it,[2] a view also expressed by our colleague, Judge Keith, writing separately in this case. A few circuits look to the Constitution as providing the source of such authority.[3]

I do not believe that the sentencing guidelines either grant or deny federal courts the power to rule on the constitutional validity of prior state convictions, and I am satisfied that sentencing courts do not have "inherent authority" to rule on such matters when applying the enhancement provisions of the sentencing guidelines. Therefore, in this separate opinion, I shall first demonstrate why I believe the plurality opinion is incorrect when it implies that a federal court has the power to do so, and I shall explain why I believe the court's power has been limited by Congress. Second, I shall explain why I believe that the Supreme Court precedent[4] relied upon in the plurality opinion and in the opinions by Judges Kennedy and Martin, and

---

1. *See United States v. Brown*, 991 F.2d 1162 (3d Cir.1993); *United States v. Canales*, 960 F.2d 1311 (5th Cir.1992); *United States v. Jakobetz*, 955 F.2d 786 (2d Cir.), *cert. denied*, —— U.S. ——, 113 S.Ct. 104, 121 L.Ed.2d 63 (1992).

2. The Eighth Circuit initially concluded that Application Note 6 *"forbids* collateral attacks on prior convictions used to compute a defendant's criminal history score under the Guidelines." *United States v. Day*, 949 F.2d 973, 980 (8th Cir.1991) (emphasis added). Recently, the Eighth Circuit added the following exception: "except when the Constitution requires that a

collateral attack at sentencing be permitted." *United States v. Elliott*, 992 F.2d 853, 856 (8th Cir.1993).

3. *See United States v. Roman*, 989 F.2d 1117 (11th Cir.1993) (*en banc* ); *United States v. Vea-Gonzales*, 986 F.2d 321 (9th Cir.1993).

4. Specifically, *United States v. Tucker*, 404 U.S. 443, 92 S.Ct. 589, 30 L.Ed.2d 592 (1972) and *Burgett v. Texas*, 389 U.S. 109, 88 S.Ct. 258, 19 L.Ed.2d 319 (1967).

in the decision of at least two other circuits,[5] does not determine whether a federal court has authority to invalidate a prior conviction for sentencing purposes. Third, I shall explain that the language of the sentencing guidelines, and the commentary thereto, have been misread, and that the sentencing guidelines do not authorize federal district courts to invalidate, at federal sentencing, prior state convictions. Finally, I shall express the reasons for my strong disagreement with the formula that appears to have been approved by the court today for the exercise of the sentencing court's discretion in deciding to entertain challenges to the validity of state court convictions.

## I.

### A.

En route to its conclusion—that whether a defendant may obtain a ruling upon his challenge to the validity of a prior state court conviction is a matter within the sentencing court's discretion—the plurality opinion assumes that a sentencing federal court has the authority to invalidate a presumptively valid state conviction if the court finds the conviction constitutionally infirm. The plurality fails to identify the source of that authority, and the opinion offers neither reasoned analysis nor applicable citation of law in support

of the conclusion that district courts have the authority to evaluate the validity of prior state convictions. The plurality rejects the view that the sentencing guidelines are the source of the court's authority and instead claims that the guidelines acknowledge that the federal court's authority comes from the "inherent power of the court." Plurality op. at 1042 n. 7. No circuit has held, as the plurality opinion seems to, that a federal court has "inherent power" to do what the court authorizes today. The plurality opinion cites to no applicable authority, and I have found none, for the conclusion that the district courts have "inherent power" to entertain constitutional challenges to state court convictions and, in certain cases, invalidate those judgments. Apparently, there is none.

### B.

Federal courts do not have such "inherent power." I recognize that a federal district court has limited "inherent authority" to take appropriate action to protect its jurisdiction from conduct which impairs its ability to carry out its Article III functions. *See Chambers v. NASCO, Inc.,* —— U.S. ——, ——, 111 S.Ct. 2123, 2132, 115 L.Ed.2d 27 (1991).[6] To my knowledge, this is the extent of a federal district court's "inherent authori-

---

5. Relying on *Burgett*, the First Circuit recently held that "the Constitution requires a review of the constitutionality of prior convictions at sentencing only where the prior convictions are 'presumptively void.'" *United States v. Isaacs,* No. 92–2129, 1993 WL 210537 (1st Cir. June 22, 1993). The Ninth Circuit relied on *Burgett* and *Tucker* to hold that the United States Constitution requires that federal sentencing courts give defendants an opportunity to collaterally attack prior convictions that will be used against them at sentencing, a view adopted by my colleague Judge Martin. *United States v. Vea-Gonzales,* 986 F.2d 321 (9th Cir.1993). I am relieved to note that the plurality opinion rejects this "approach." Plurality op. at 1041. As discussed in section II, the plurality opinion relies on *Burgett* and *Tucker* to support a different conclusion.

6. In *Chambers,* the Supreme Court outlined the scope of the district court's limited "inherent authority," noting that "inherent powers must be exercised with restraint and discretion":

It has long been understood that "[c]ertain implied powers must necessarily result to our

Courts of justice from the nature of their institution," powers "which cannot be dispensed with in a Court, because they are necessary to the exercise of all others." For this reason, "Courts of justice are universally acknowledged to be vested, by their very creation, with power to impose silence, respect, and decorum, in their presence, and submission to their lawful mandates." These powers are "governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases."

*Id.* (citations omitted). Thus, a district court has "inherent power" "to control admission to its bar and to discipline attorneys who appear before it"; to punish for contempt; "to vacate its own judgment upon proof that a fraud has been perpetrated upon the court"; to "bar from the courtroom a criminal defendant who disrupts a trial"; to dismiss a suit for forum non conveniens; or to dismiss *sua sponte* an action on the basis of failure to prosecute. *Id.* (citations omitted).

ty." Certainly a federal court does not have "inherent authority" to define or expand its own jurisdiction, and, in particular, it has no "inherent authority" to adjudicate the validity of state court judgments. Only Congress can extend such power to federal courts. *See* U.S. Const., art. III § 1.

The entirety of the power of the federal judiciary is derived from Article III of the United States Constitution.[7] Section 2 of Article III "delineates the absolute limits on the federal courts' jurisdiction," *Ankenbrandt v. Richards,* —— U.S. ——, ——, 112 S.Ct. 2206, 2211, 119 L.Ed.2d 468 (1992), by setting out "[t]he character of the controversies over which federal judicial authority may extend...." *Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee,* 456 U.S. 694, 701, 102 S.Ct. 2099, 2104, 72 L.Ed.2d 492 (1982). And, section 1 further limits jurisdiction of the lower federal courts

> to those subjects encompassed within a statutory grant of jurisdiction. Again, this reflects the constitutional source of federal judicial power: Apart from this Court, that power only exists "in such inferior Courts as the Congress may from time to time ordain and establish."

*Insurance Corp. of Ireland,* 456 U.S. at 701–02, 102 S.Ct. at 2104 (quoting U.S. Const.art. III, § 1). Accordingly, Congress determines the source of jurisdiction of the lower federal courts. *Federal Power Comm'n v. Pacific Power & Light Co.,* 307 U.S. 156, 159, 59 S.Ct. 766, 767–68, 83 L.Ed. 1180 (1939). Although bound by the constitutional limits on jurisdiction, Congress has discretion in dealing with the jurisdiction of the lower federal courts, and it is Congress's task to allocate judicial power by granting or withholding from the federal courts jurisdiction over specific types of cases. *Malamud v. Sinclair*

*Oil Corp.,* 521 F.2d 1142, 1146–47 (6th Cir. 1975). "Unless Congress has granted jurisdiction to the [federal] courts, Article III limits the ability of district courts to act." *In re Allied–Signal, Inc.,* 915 F.2d 190, 191 (6th Cir.1990). In *Federal Labor Relations Auth. v. U.S. Dep't of Commerce,* 962 F.2d 1055, 1058 (D.C.Cir.1992), the court stated that "absent extraordinary circumstances ..., the judiciary is constrained to exercise that jurisdiction which Congress provides."

Federal courts are not courts of general jurisdiction, for "they have only the power that is authorized by Article III of the Constitution and the statutes enacted by Congress pursuant thereto." *Bender v. Williamsport Area Sch. Dist.,* 475 U.S. 534, 541, 106 S.Ct. 1326, 1331, 89 L.Ed.2d 501 (1986). "For that reason, every federal appellate court has a special obligation to 'satisfy itself not only of its own jurisdiction, but also that of the lower courts in a cause under review'...." *Id.* (quoting *Mitchell v. Maurer,* 293 U.S. 237, 244, 55 S.Ct. 162, 165, 79 L.Ed. 338 (1934)).

The Full Faith and Credit statute, 28 U.S.C. § 1738, which implements the Constitution's Full Faith and Credit Clause, U.S. Const.art. IV, § 1, and codifies the time-honored principles of federalism and comity that limit the authority of federal courts, *see Migra v. Warren City Sch. Dist. Bd. of Educ.,* 465 U.S. 75, 84, 104 S.Ct. 892, 897–98, 79 L.Ed.2d 56 (1984), is directly implicated in this matter of invalidating state court convictions. It is clear that, through the Full Faith and Credit statute, Congress has limited the federal courts' jurisdiction to invalidate state court judgments. The statute provides, in relevant part, that the

> judicial proceedings [of any State, Territory, or Possession] ... shall have the *same*

---

7. Article III states in pertinent part:

Section 1. The judicial Power of the United States, shall be vested in one supreme Court, and in such inferior Courts as the Congress may from time to time ordain and establish....

Section 2. The judicial Power shall extend to all Cases, in Law and Equity, arising under this Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their Authority;—to all Cases affecting Ambassadors, other public Ministers

and Consuls;—to all Cases of admiralty and maritime Jurisdiction;—to Controversies to which the United States shall be a Party;—to Controversies between two or more States;—between a State and Citizens of another State;—between Citizens of different States;—between Citizens of the same State claiming Lands under Grants of different States, and between a State, or the Citizens thereof, and foreign States, Citizens or Subjects.

U.S. Const., art. III, §§ 1, 2.

full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken.

28 U.S.C. § 1738 (emphasis added). The Full Faith and Credit statute requires federal courts to give state court judgments "the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." *Migra,* 465 U.S. at 81, 104 S.Ct. at 896. The statute "reflects a variety of concerns, including notions of comity, the need to prevent vexatious litigation, and a desire to conserve judicial resources." *Id.* at 84, 104 S.Ct. at 898. It applies to state criminal as well as state civil judgments. *See Allen v. McCurry,* 449 U.S. 90, 91, 105, 101 S.Ct. 411, 413, 420, 66 L.Ed.2d 308 (1980).

The Supreme Court has held that the requirements of the Full Faith and Credit statute presumptively control unless a coordinate federal statute contains "an express or implied partial repeal" of section 1738. *Kremer v. Chemical Constr. Corp.,* 456 U.S. 461, 468, 102 S.Ct. 1883, 1890, 72 L.Ed.2d 262 (1982). Moreover, the Court has stressed that courts should find an implied repeal only where it is demonstrated that "Congress intended to override the historic respect that federal courts accord state court judgments." *Id.* at 471–72, 102 S.Ct. at 1892. One clear example of such intent is "the authorization for federal courts to reexamine state findings upon a request for a writ of habeas corpus." *Id.* at 485 n. 27, 102 S.Ct. at 1899 n. 27.

Congress has not authorized federal courts to do what the plurality sanctions today— that is, reexamine state findings upon request in a federal sentencing proceeding under the sentencing guidelines. Congress has, however, authorized federal court review of state court findings when the federal court contemplates increasing the mandatory minimum sentence of a defendant convicted of certain drug offenses. *See* 21 U.S.C. § 851. Thus, in section 851, we find another clear example of Congress's decision to legislate an exception to the Full Faith and Credit statute. Section 851 operates in tandem with 21 U.S.C. § 841(b). Under section 841(b), the court may increase the mandatory minimum sentence of a defendant convicted of certain drug offenses if the defendant has been convicted of prior drug-related felonies. Section 851 allows a defendant to attack, prior to sentencing, the constitutional validity of certain prior drug-related offenses that are to be the basis of the statutory enhancement under section 841(b), and the sentencing court must entertain that attack.[8] In section 851, Congress carved out a limited exception to the Full Faith and Credit statute by specifically authorizing district courts to adjudicate the validity of prior drug convictions when the court contemplates imposing the enhancement of section 841(b). Congress has not created a similar exception for enhancement under the sentencing guidelines.

Federal district court review of the convictions of other courts is properly limited to those proceedings where Congress has demonstrated its "clear intent" to provide for a "partial repeal" of the Full Faith and Credit statute. Congress has limited federal collateral review of state court proceedings because of the strong interest in maintaining comity between state and federal courts. It

---

8. This court has held that the mandatory protections of 21 U.S.C. § 851 apply only to the statutory enhancement provisions of 21 U.S.C. § 841 and not to the enhancement provisions of the sentencing guidelines. *United States v. Meyers,* 952 F.2d 914, 919 (6th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 1695, 118 L.Ed.2d 407 (1992).

 Section 851 provides in pertinent part:
 (c)(1) If the [defendant] denies any allegation ... of prior conviction, or claims that any conviction alleged is invalid, he shall file a written response.... The court shall hold a hearing to determine any issues raised by the response which would except the person from increased punishment.... The hearing shall be before the court ... and either party may introduce evidence....
 (2) A person claiming that a conviction alleged in the information was obtained in violation of the Constitution of the United States shall set forth his claim, and the factual basis therefor, with particularity in his response....
 . . . .
 (d)(2) If the court determines ... that a conviction alleged in the indictment is invalid ..., the court shall, at the request of the United States attorney, postpone sentence to allow an appeal from that determination.
 21 U.S.C. § 851.

is this concern for comity that underlies the requirement, for example, that a prisoner exhaust available state remedies before seeking relief from a state conviction by means of habeas corpus review in the federal courts.[9] The exhaustion requirement "serves to minimize friction between our federal and state systems of justice by allowing the State an initial opportunity to pass upon and correct alleged violations of prisoners' federal rights." *Duckworth v. Serrano,* 454 U.S. 1, 3, 102 S.Ct. 18, 19, 70 L.Ed.2d 1 (1981) (per curiam). Although the habeas remedy has a long and venerable history and is a core value in the United States Constitution, both Congress and the federal courts have carefully limited its availability for the sake of comity between state and federal courts in order to preserve the principles of finality in litigation. *See Engle v. Isaac,* 456 U.S. 107, 127, 102 S.Ct. 1558, 1571, 71 L.Ed.2d 783 (1982). Similarly, Congress has even limited federal collateral review under 21 U.S.C. § 851 by prohibiting a defendant from challenging the validity of a conviction over five years old.[10]

Nothing in the language of Article III or the Full Faith and Credit statute, or in the decisions interpreting either, suggests the existence of a residual "inherent power" in federal courts to invalidate state convictions for a limited purpose, such as sentencing, free of the constraints imposed upon the habeas corpus or other statutorily created collateral remedies. In fact, any "inherent power" that existed in federal sentencing courts to adjudicate the constitutional validity of a prior state conviction, if it ever existed, was limited by Congress when it enacted the Full Faith and Credit statute. Clearly, Congress knows how to grant collateral review authority to district courts when it desires to do so. The Sentencing Reform Act, 18 U.S.C. § 3551, does not provide for such authority, and nothing in the guidelines, or its commentary, supports a conclusion that

Congress intended to carve out another exception to the Full Faith and Credit statute by permitting collateral review of state convictions by a federal sentencing court when sentencing guideline enhancement is contemplated. Nor could the guidelines create such an exception to the Full Faith and Credit statute without the express authority of Congress. *See* discussion of the sentencing guidelines and *Mistretta v. United States,* 488 U.S. 361, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989), *infra,* section III. Absent such an express or implied partial repeal of section 1738, federal courts must give full faith and credit to prior state convictions when determining a federal sentence pursuant to the guidelines.

## C.

The plurality opinion states that the Full Faith and Credit statute, traditional notions of comity and federalism, and considerations of collateral estoppel and *res judicata* are no obstacle to the invalidation of a prior state conviction for sentencing purposes only, because such " 'concerns' " are " 'inapplicable.' " Plurality op. at 1042 (quoting *United States v. Guthrie,* 931 F.2d 564, 571 (9th Cir.1991)). According to the plurality opinion, a challenge to a presumptively valid state conviction for purposes of sentencing "is not equivalent to a full-blown collateral attack" because the conviction is not vacated. Plurality op. at 1042. "Any determination made by the sentencing court regarding the use of that prior conviction for sentencing purposes would have no preclusive effect on any other court that may in the future have reason to consider that conviction's validity. . . ." Plurality op. at 1042.

To begin with, it is not at all clear that the sentencing court's invalidation of a state conviction would have no preclusive effect. As-

---

**9.** This exhaustion of remedies requirement is codified at 28 U.S.C. § 2254(b):

An application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State, or that there is either an absence of available State corrective process or the exis-

tence of circumstances rendering such process ineffective to protect the rights of the prisoner.

**10.** "No person who stands convicted of an offense under this part may challenge the validity of any prior conviction alleged under this section which occurred more than five years before the date of the information alleging such prior conviction." 21 U.S.C. § 851(e).

sume in this age of criminal recidivism that a defendant, who last year successfully persuaded a federal district court to exercise its "inherent power" to declare invalid one or more of the defendant's prior state convictions, now faces sentencing in a second federal court. Assume, as should be expected, that the defendant cites the first federal court's judgment as authority for his claim that the previously invalidated state convictions "continue" to be constitutionally invalid and not countable for sentencing purposes. Does the first sentencing court's adjudication have preclusive effect in the second sentencing federal court? Unless federal court adjudications of the constitutional validity of state court judgments are determinations "for this ticket, for this train, for this day only," the first federal sentencing court's determination must surely be preclusive upon subsequent courts with respect to the same issue between the same parties. And what of the effect of the first federal sentencing court's "limited invalidation" on a subsequent federal prosecution under the Armed Career Criminal Act, 18 U.S.C. § 924(e)(1), when the government wishes to "count" the prior state convictions? And what of the effect of a judgment of invalidity upon a later sentencing state court? The questions suggest their own answers, and, in all events, suggest the prospect of profound confusion.

But even if the plurality opinion is correct and an adjudication of invalidity of a state conviction for federal sentencing purposes has absolutely no preclusive effect, the solution offered today by the plurality opinion is illogical and unfair. The same prior state conviction 1) may or may not be subject to collateral attack before various subsequent federal judges, depending upon the judges' "discretion" whether to entertain such an attack, and 2) may be adjudicated constitutionally invalid in some federal courts and valid in others. Such disparity does not comport with either common sense or the guidelines' overarching goal of enhancing sentence uniformity and predictability.

The plurality opinion also states that even if the Full Faith and Credit statute were to apply, allowing a sentencing court to determine the constitutional validity of a prior

conviction does not violate that statute. The reasoning seems to be that since "many states allow collateral attacks to be made at sentencing on prior state convictions," allowing federal courts to do so "is not violative of Full Faith and Credit Clause principles." Plurality op. at 1042. The flaw in such reasoning is obvious: Of course, states are free to invalidate their own prior convictions as they deem appropriate, but *until* such time as a state invalidates its own prior conviction, the Full Faith and Credit statute requires federal courts to fully respect that conviction's validity.

I recognize that there is a difference between an adjudication of invalidity of a state conviction under the federal Constitution in a habeas corpus proceeding and such a determination for sentencing purposes only. The difference, essentially, is that an adjudication in a habeas proceeding is complete, for all purposes, state and federal. Nevertheless, as Judge Wilkinson of the Fourth Circuit writing in dissent stated, the Full Faith and Credit statute "requires federal courts to give 'not some, but full credit' to state judicial proceedings," *United States v. Jones,* 907 F.2d 456, 483 (4th Cir.1990) (*Jones I*) (Wilkinson, J., dissenting) (quoting *Davis v. Davis,* 305 U.S. 32, 40, 59 S.Ct. 3, 6, 83 L.Ed. 26 (1938)), *cert. denied,* 498 U.S. 1029, 111 S.Ct. 683, 112 L.Ed.2d 675 (1991), and:

> Federal court invalidation of a state conviction—even if it lacks collateral legal consequences within the state—constitutes a major affront to the integrity of the state's judicial process.

*Id.* at 479. An adjudication of invalidity for sentencing purposes only, is no less a failure to accord the state judgment *full* faith and credit, and it is no less an insult to the jurisdiction of the state court:

> State convictions are either valid or they are invalid. They are not valid for some purposes, but invalid for others. They are not valid in the eyes of the state judiciary, but invalid in the eyes of the federal system.

*Id.* To which I would add, nor can they be invalid in one federal sentencing court and valid in another. There is, in my judgment, no such thing as "limited" federal constitu-

tional invalidity. What the court has approved for this circuit is a violation of the plain language of the Full Faith and Credit statute.

There is yet another disturbing aspect of the formula the court has approved today. Running through the plurality opinion is the notion that when a sentencing court determines that a prior state conviction should not be "counted" in the federal sentence for federal constitutional reasons, there will be no "adjudication" of constitutional invalidity in a judgment recording that conclusion, but merely a "determination" to "disregard" the state conviction. The "disregard[ed] evidence" of the state conviction is to be treated much the same as any other sentencing evidence deemed "untrustworthy or unreliable." *See* plurality op. at 1043. Indeed, the plurality opinion argues that I have misconstrued its holding when I declare that it has sanctioned the "invalidation" of state convictions by federal sentencing courts. According to the plurality opinion,, it merely has sanctioned the sentencing court's authority to exercise its discretion and determine that certain information is not "trustworthy" enough and should not be considered when calculating a defendant's offense level.[11] Plurality op. at 1044.

That a presumptively valid state court judgment cannot be simply "disregard[ed]" as "untrustworthy or unreliable" would seem self-evident. The plurality opinion concludes that a federal sentencing court has the power to deem a prior state conviction "untrustworthy or unreliable" *after* the court has entertained a collateral attack on the *constitutional validity* of that prior conviction and after

the court has determined that it is "unconstitutional." To suggest that such reasoning does not result in a conclusion that the "disregarded" prior conviction is "invalidated" suggests semantic game playing. Presumably, federal sentencing courts "disregard" relevant evidence for reasons. When a sentencing court decides that a state conviction is "untrustworthy or unreliable" and will be "disregarded" *because* it was unconstitutionally obtained, the court has, of necessity, determined that the conviction is "invalid." The idea that a federal judge who has entertained a challenge to the validity of a state conviction on federal constitutional grounds *only,* and then "disregards" the conviction because it is "untrustworthy or unreliable," but *not* for the reason that it is constitutionally invalid, suggests judicial legerdemain taken to a new level. I am confident most district judges would eschew these linguistic gymnastics and "call it like it is."

## II.

The plurality opinion relies on *United States v. Tucker,* 404 U.S. 443, 92 S.Ct. 589, 30 L.Ed.2d 592 (1972) and *Burgett v. Texas,* 389 U.S. 109, 88 S.Ct. 258, 19 L.Ed.2d 319 (1967), for its conclusion that because a sentencing judge must disregard evidence that is untrustworthy or unreliable, a "sentencing judge must have some discretion to entertain" a defendant's first-time challenge to a prior conviction. Plurality op. at 1043. The Eleventh Circuit relies on *Tucker* and *Burgett* to support a different conclusion: that "the Constitution bars federal courts from using certain kinds of convictions at sentencing."[12] *United States v. Roman,* 989 F.2d

---

**11.** Judge Martin's opinion observes that district courts have always had the discretion to determine the validity of prior state convictions, even prior to the enactment of the Sentencing Reform Act. I disagree. Prior to the guidelines, sentences were, for the most part, unreviewable, and district courts were not required and usually did not identify what evidence was influential in the sentence calculus. Nevertheless, if a district court determined that a sentence should not be determined by taking into account a prior state conviction *because* the court decided the prior conviction was unconstitutional, this constituted a violation of the Full Faith and Credit statute. However, because the district courts did not ordinarily specify on the record that this was the

reason for not increasing the sentence, such a determination would not have been subject to review.

Although, prior to the guidelines, a district court had the discretion to "disregard" a prior conviction, that does not mean that the district court had authority to adjudicate the constitutional validity of that prior conviction. Even before the guidelines, federal courts had the power to rule on the constitutional validity of prior state convictions only when Congress specifically authorized it.

**12.** The Eleventh Circuit sitting *en banc* held that the 1990 version of note 6 does not authorize collateral review of prior convictions at federal

1117, 1119 (11th Cir.1993) (*en banc*). And the Ninth Circuit concludes that these Supreme Court cases require sentencing courts to entertain a defendant's collateral attacks. *United States v. Vea–Gonzales*, 986 F.2d 321 (9th Cir.1993). But a careful examination of the facts and holdings of *Tucker* and *Burgett* reveals that neither case is applicable to the issue before us, for neither speaks to whether a sentencing court has the power to adjudicate the constitutional validity of a prior conviction.

*Burgett* was a direct appeal from state court proceedings in Texas. The issue before the Supreme Court involved the state court's evidentiary ruling on the admissibility of certain evidence at trial. The defendant had been charged under Texas's recidivist statute, which requires the state to specifically plead in the indictment and prove at trial the prior convictions that trigger the enhanced sentence. Under the statute, the jury determines whether the state has proven the prior convictions; however, the jury is not to consider the evidence of prior convictions when it determines the defendant's guilt on the underlying charge. Prior to *Burgett*, the Supreme Court, in *Spencer v. Texas*, 385 U.S. 554, 87 S.Ct. 648, 17 L.Ed.2d 606 (1967), rejected the argument that, because Texas's recidivist statute allowed information regarding a defendant's prior convictions to go before the jury through the indictment or proofs, the statute was "fundamentally unfair" and violative of the Fourteenth Amendment. The defendant in *Spencer* had argued that allowing the jurors to hear this evidence was unduly prejudicial because it tended to show the probability of guilt based on the prior convictions. The Court found, however, that the defendant's interest in a fair trial was adequately protected by limiting instructions and by the judge's

discretion to limit or forbid the admission of evidence that is unduly prejudicial. *Id.* at 561, 87 S.Ct. at 652.

In *Burgett*, however, the Court found it an abuse of discretion to accept into evidence, as proof of a prior conviction, certified records indicating on their face that Burgett was not represented by counsel when he was convicted of the prior offense. The Supreme Court held:

> The admission of a prior criminal conviction which is constitutionally infirm under the standards of *Gideon v. Wainwright*[, 372 U.S. 335, [83 S.Ct. 792, 9 L.Ed.2d 799] (1963),] is inherently prejudicial and we are unable to say that the instructions to disregard it made the constitutional error "harmless beyond a reasonable doubt" within the meaning of *Chapmen v. California*, 386 U.S. 18 [87 S.Ct. 824, 17 L.Ed.2d 705] [ (1967) ].

*Burgett*, 389 U.S. at 115, 88 S.Ct. at 262 (footnote omitted). The Court was concerned with the prejudicial effect the "facially invalid" prior conviction might have on the guilt phase of the trial. Thus, *Burgett* does not even involve a sentencing issue, least of all a federal sentencing court's authority to adjudicate the constitutionality of a prior conviction. Rather, it involves an evidentiary holding limiting the admissibility of evidence that would unfairly prejudice the jury's determination of the defendant's guilt. I do not understand why the plurality and so many of our sister circuits rely on a Supreme Court decision reviewing a state court's evidentiary ruling as authority for the proposition that federal sentencing courts have the authority to entertain constitutional attacks on presumptively valid prior state convictions.

sentencing hearings; rather, it recognizes that the Constitution prohibits federal courts from using "presumptively void" convictions to enhance a defendant's sentence. *United States v. Roman*, 989 F.2d 1117 (11th Cir.1993) (*en banc*). Recently, the First Circuit adopted this view. *See Isaacs*, 1993 WL 210537.

Although it is not entirely clear what "presumptively void" means, none of the cases before this *en banc* court involve convictions that are "presumptively void" or "facially invalid."

Therefore, I would leave for another day the determination whether a district court must disregard a prior conviction that is "invalid on its face." One should not be too quick to conclude that it can be determined from the face of court documents alone that a conviction is invalid. For example, even if the court documents indicate on their face that the defendant was not represented by counsel, it may be that counsel was waived, and that evidence outside the court documents would establish that the conviction is valid.

*Tucker* does not speak to the issue before us either. *Tucker* involved Supreme Court review of a denial of a habeas corpus petition to vacate defendant's sentence under 28 U.S.C. § 2255. In *Tucker*, the Supreme Court held that section 2255 relief is appropriate if a defendant shows that his sentence was enhanced on the basis of a prior conviction that was later *adjudicated* constitutionally infirm because of lack of counsel. *Tucker* demonstrates that if a federal sentence is enhanced under the guidelines on the basis of a prior conviction that is subsequently *adjudicated* to be invalid, a defendant may seek habeas relief through a motion to vacate, set aside, or correct the sentence under 28 U.S.C. § 2255. *Tucker*, 404 U.S. 443, 92 S.Ct. 589, 30 L.Ed.2d 592. The opinion does not, however, stand for the proposition that federal sentencing courts are authorized to adjudicate the validity of prior state convictions for sentencing purposes.

Judge Kennedy reads *Tucker* and *Burgett* as holding that "one has a constitutional right not to have a sentence enhanced by reason of an unconstitutional prior conviction." Separate op. at 1064. She concludes that "[i]f one has such a constitutional right, there must be some forum where it can be enforced." *Id.* Even if I were to agree that the *dicta* in *Tucker* and *Burgett* provides that there is a constitutional right to not have a sentence enhanced on the basis of an unconstitutionally obtained prior conviction, it does not necessarily follow that federal sentencing courts have the power to rule on the prior convic-

tion's validity. While *Tucker* and *Burgett* state that " '[t]o permit a conviction obtained in violation of *Gideon v. Wainwright* to be used against a person either to support guilt or enhance punishment for another offense ... is to erode the principle of that case,' " plurality op. at 1043 (quoting *Tucker*, 404 U.S. at 449, 92 S.Ct. at 592–93), it must be remembered that defendant first must estab-. lish the constitutional invalidity of that prior conviction *in an appropriate forum.* Congress has limited the district court's power to entertain collateral attacks on state convictions and has established limited circumstances under which a district court is the appropriate forum for attacking the constitutional validity of a state court conviction.[13] The question before us is whether a federal sentencing court is an appropriate forum to entertain such an attack when it applies the enhancement provisions of the sentencing guidelines. I conclude that it is not. Congress has not extended this power of collateral relief to federal sentencing courts when sentencing enhancement is pursuant to the sentencing guidelines.

### III.

Although the plurality opinion claims that it does not locate the federal court's authority to invalidate state convictions in the sentencing guidelines, the plurality relies upon the decisions of three circuits,[14] all of which hold, either explicitly or by clear implication, that the sentencing guidelines are, in fact, the source of the district court's authority.[15]

---

13. *E.g.,* habeas corpus and other forms of collateral relief that have been specifically-legislated. *See, e.g.,* 21 U.S.C. § 851 discussed *supra* at I–B.

14. *United States v. Brown,* 991 F.2d 1162 (3d Cir.1993); *United States v. Canales,* 960 F.2d 1311 (5th Cir.1992); *United States v. Jakobetz,* 955 F.2d 786 (2d Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 104, 121 L.Ed.2d 63 (1992).

15. In *United States v. Jakobetz,* 955 F.2d 786, 805 (2d Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 104, 121 L.Ed.2d 63 (1992), the Second Circuit stated:

> [T]he newly revised version of the *guidelines clarifies the commission's position* on defendants' direct challenges to the validity of prior convictions at sentencing: while defendants may always present the sentencing court with

evidence that another court has ruled their prior convictions invalid and hence unsuitable for consideration ..., the court also retains discretion to determine whether a defendant may mount an initial challenge to the validity of such convictions.

(Emphasis added.) Similarly, in *United States v. Canales,* 960 F.2d 1311, 1315 (5th Cir.1992), the Fifth Circuit determined "that the sentencing guidelines *authorize* a district court, in its discretion, to hear constitutional challenges to prior convictions ... not previously ... ruled invalid" and stated:

> We now hold, in accord with the interpretation taken by the Second ... Circuit[ ], *that application note 6 allows* a district court, in its discretion, to inquire into the validity of prior convictions at sentencing hearings.

(Emphasis added.) Most recently, in *United States v. Brown,* 991 F.2d 1162, 1166 (3d Cir.

Furthermore, McGlocklin and at least one of my colleagues also locate the federal sentencing court's authority in the guidelines. Consequently, I shall now address that matter and explain why I believe this view is mistaken.

The United States Sentencing Commission has determined that a defendant's "past criminal conduct is directly relevant" to sentencing. U.S.S.G. Ch. 4, Pt.A., intro. comment. As a result, the guidelines subject defendants with criminal histories to increased imprisonment terms by requiring federal sentencing courts to count defendants' "prior sentences" when determining their criminal history category or "career offender" status.[16] *See* U.S.S.G. §§ 4A1.1, 4B1.1. According to section 4A1.2 of the guidelines, a "prior sentence" is "any sentence previously imposed upon adjudication of guilt, whether by guilty plea, trial, or plea of *nolo contendere,* for conduct not part of the instant offense." U.S.S.G. § 4A1.2(a)(1).

Subsection (j) of section 4A1.2 refers to *"Expunged Convictions"* and provides that "[s]entences for expunged convictions are not counted, but may be considered under § 4A1.3 (Adequacy of Criminal History Category)." U.S.S.G. § 4A1.2(j). As the past tense adjective "expunged" indicates, this section precludes a sentencing court from counting sentences for convictions that have been invalidated in *previous* proceedings. It does not, however, purport to establish any authority for a district court to entertain and resolve collateral challenges to prior convictions during the sentencing proceeding itself.

Interestingly, the circuits that have found that federal sentencing courts have the authority to invalidate state convictions in collateral proceedings do not rely upon the language of guideline section 4A1.2 alone. Instead, these courts rely on Application Note 6 to this section. Application Note 6 pro-

vides an explanation of what is meant by "Expunged Convictions." *Before* November 1, 1990, this note was entitled *"Invalid Convictions"* and provided as follows:

> Sentences resulting from convictions that have been *reversed or vacated* because of errors of law, or because of subsequently-discovered evidence exonerating the defendant, are not to be counted. Any other sentence resulting in a valid conviction is to be counted in the criminal history score. Convictions which the defendant *shows to have been constitutionally invalid* may not be counted in the criminal history score.... Nonetheless, any conviction that is not counted in the criminal history score may be considered pursuant to § 4A1.3 if it provides reliable evidence of past criminal activity.

U.S.S.G. § 4A1.2, comment. (n. 6) (1987) (emphasis added). Strangely, this note, in the first sentence, referred to "reversed or vacated" convictions, but, in the third sentence, referred to convictions "which the defendant shows to have been constitutionally invalid."

Although the guideline itself refers to "expunged convictions" in the past tense, several courts, including this court, interpreted the third sentence of this Application Note 6 as *authorizing* federal sentencing courts to entertain collateral attacks on prior convictions and thus to determine, in the first instance, the validity of those convictions. *See, e.g., Guthrie,* 931 F.2d at 570–71 (9th Cir.); *United States v. Bradley,* 922 F.2d 1290, 1297 (6th Cir.1991); *United States v. Edwards,* 911 F.2d 1031, 1035 (5th Cir.1990); *Jones I,* 907 F.2d at 463 (4th Cir.). Consequently, these courts read "old" Application Note 6 in such a way as to substantially expand the plain meaning of guideline section 4A1.2(j); they read the application note to *confer* upon Article III courts powers the guideline provision does not address. This reading of the note is simply mistaken.

1993), the Third Circuit held that "the background note was meant to say that the courts should work out their own procedural rules regarding efforts by defendants to challenge convictions not previously held unconstitutional." Thus, the *Brown* court adopted the view of other circuits that "have reached the conclusion *that [the guideline] provisions give* sentencing courts the discretion to consider or to refuse to consider

attacks on prior convictions not previously ruled unconstitutional." *Id.* (emphasis added).

16. Section 4A1.1 of the sentencing guidelines provides for the calculation of a defendant's criminal history category based on "prior sentences" imposed on the defendant, and section 4B1.1 provides enhanced sentences for a defendant who qualifies as a "career offender."

The application notes are part of the Sentencing Commission's commentary on the guidelines. As such, they may shed light on how the guidelines should be applied to particular fact situations, but they may not properly be read to alter the very meaning of the guidelines. *See United States v. Bogas,* 920 F.2d 363, 368 (6th Cir.1990). Section 4A1.2(j) simply directs courts not to count "expunged convictions" in calculating a defendant's criminal history category. It says nothing, explicitly or implicitly, about empowering district courts to entertain collateral attacks upon prior convictions at the sentencing hearing itself, and neither did its application note. Old Application Note 6 did nothing more than elaborate on what was meant by "expunged" convictions. It is remarkable, to say the least, that federal appellate courts would rely upon an explanatory background note to the sentencing guidelines as the source of authority for federal courts to adjudicate a state judgment of conviction invalid on federal constitutional grounds, even if only for sentencing purposes.

Apparently, the Sentencing Commission also thought it remarkable, and in November 1990, amended the guidelines in a way that clearly revealed the error in this reading of old Application Note 6. The amendment eliminated the inconsistency between the past tense language of section 4A1.2(j) of the guidelines and the present tense language of the third sentence of Application Note 6. That note now refers to *"Reversed, Vacated, or Invalidated Convictions"* and provides, in relevant part, that "sentences resulting from convictions that a defendant shows to have been *previously ruled* constitutionally invalid are not to be counted." U.S.S.G. § 4A1.2, comment. (n. 6) (1990) (emphasis added).

As the language of the note now makes clear, section 4A1.2(j) precludes district courts from counting only those convictions that have been previously ruled constitutionally invalid. The note may no longer be interpreted, and indeed it never should have been, as authorizing federal sentencing courts to entertain collateral attacks of prior convictions. The Commission emphasized this point by adding the following background commentary to section 4A1.2: "The

Commission leaves for court determination the issue of whether a defendant may collaterally attack at sentencing a prior conviction." U.S.S.G. § 4A1.2, comment. (backg'd.). But this corrective effort by the Sentencing Commission, rather than eliminating the problem, spawned an even more peculiar line of cases. A number of circuits have now read the thoroughly neutral statement in the background note—that "[t]he Commission leaves for court determination the issue of whether a defendant may collaterally attack at sentencing a prior conviction"—as a specific conferral of authority upon federal courts to invalidate state convictions. Quite aside from this misreading of the note, it is surprising, at least to me, that federal courts, including this one, would continue to turn to a background note in the sentencing guidelines, particularly after the 1990 amendments, to locate the source of authority for federal courts to adjudicate the validity of state court convictions at sentencing hearings. A less likely repository of federal court authority to adjudicate a federal constitutional issue would be hard to imagine.

Nevertheless, the Second, Third, and Fifth Circuits, in analyzing the 1990 version of Application Note 6 and the background commentary to section 4A1.2 of the guidelines, have concluded that, under the guidelines, federal sentencing courts have been left the discretion to entertain collateral attacks on prior convictions. *See United States v. Brown,* 991 F.2d 1162 (3d Cir.1993); *United States v. Canales,* 960 F.2d 1311 (5th Cir. 1992); *United States v. Jakobetz,* 955 F.2d 786 (2d Cir.), *cert. denied,* — U.S. —, 113 S.Ct. 104, 121 L.Ed.2d 63 (1992). In so doing, these courts made the same error as those courts that interpreted old Application Note 6 as authorizing federal district courts to entertain collateral attacks of prior convictions. They relied on a background commentary to the guidelines for a grant of authority to federal courts that the guidelines do not and cannot make. They attributed to the Sentencing Commission authority it does not have and, indeed, never claimed to have.

In *Mistretta,* 488 U.S. 361, 109 S.Ct. 647 the Supreme Court upheld the constitutional-

ity of the Sentencing Reform Act, 18 U.S.C. § 3551, *et seq.*, which established the Sentencing Commission and authorized the sentencing guidelines. The Court found the Act constitutional partly because the Act does not grant the Commission excessive legislative discretion in violation of the constitutionally based nondelegation doctrine. The Court found that although Congress granted the Commission substantial discretion in formulating guidelines, Congress nevertheless legislated and delineated " 'the general policy, the public agency ..., and the boundaries of [the] delegated [sentencing] authority.' " *Mistretta*, 488 U.S. at 373, 109 S.Ct. at 655 (citation omitted). Congress cannot and has not delegated general legislative duties to the Sentencing Commission. *Id.* at 372, 109 S.Ct. at 654–55. The Act delegates to the Commission only those sentencing powers that were exercised previously by the judiciary as an aggregate. *Id.* at 367, 109 S.Ct. at 652.

Under the Sentencing Reform Act, it is appropriate for the Commission to make the policy judgment that it will require federal courts to consider prior convictions and to enhance sentences accordingly. But this does not mean that the Commission also has the power to grant courts the discretion to invalidate presumptively valid prior state convictions. As discussed earlier, the Constitution and Congress limited a federal court's power to entertain collateral attacks on state convictions. As explained earlier, allowing first-time collateral attacks on prior convictions at federal sentencing hearings does not comport with the Full Faith and Credit statute. If the Commission "authorizes" such attacks, it is attempting a partial repeal of section 1738, and any partial repeal of section

1738 is a legislative act that goes beyond the delegated authority of the Commission.

A proper reading of the background note 6 reveals that the Sentencing Commission is well aware of the limits on its authority and has not attempted to "authorize" collateral attacks on prior state convictions. Nothing in the background commentary to guideline section 4A1.2 confers upon district courts the "discretion" to entertain collateral attacks upon prior convictions. The courts that have found that it does, seem to read the sentence, "The Commission leaves for court determination the issue of whether a defendant may collaterally attack at sentencing a prior state conviction," as meaning "The Commission authorizes district courts, at sentencing, to determine the constitutionality of prior state court judgments." This reading is not warranted either by the plain language of the guidelines and the note, or by elemental principles of federal jurisdiction.

A plain English reading of the note reveals an acknowledgement that the entire issue is "for court determination." The Commission's statement is a neutral observation and adopts no position on the matter in deference to the authority of Article III courts to resolve the issue. It is merely an observation by the Commission that the guidelines, including the background commentary notes, have nothing to say about the courts' authority in the matter and that, therefore, it is for the courts to define that authority. The background commentary to section 4A1.2 means exactly what it says. The Commission members who amended the *background note* in 1990 must wonder what more they can do to make it clear that the note does not confer upon federal courts authority that the guideline itself does not purport to confer.[17]

---

17. In yet another attempt to clarify its intent with regard to the issue before us, the Sentencing Commission recently submitted to Congress a proposed amendment to section 4A1.2's commentary. *See* 58 Fed.Reg. 27148–27160 (May 6, 1993) (Amendment 20). Amendments intended to clarify an existing guideline "should be given substantial weight in determining the meaning of the existing guideline." *United States .v. Luster,* 889 F.2d 1523, 1529 (6th Cir.1989).

The amendment to the commentary deletes that portion of the background note indicating that the "Commission leaves for court determi-

nation the issue" whether a first-time collateral attack on a prior conviction is permitted at sentencing. The amendment also changes the language of Application Note 6 to read:

Sentences resulting from convictions that (A) have been reversed or vacated because of errors of law or because of subsequently-discovered evidence exonerating the defendant, or (B) *have been ruled constitutionally invalid in a prior case,* are not to be counted. Nonetheless, the criminal conduct underlying any conviction that is not counted in the criminal history

## IV.

Despite the several reasons discussed for concluding that there are insurmountable constitutional and statutory barriers to permitting federal sentencing courts to invalidate state convictions for sentencing purposes, the majority of my colleagues do not agree. Their contrary view now becomes the law of this circuit. For that reason alone, it now becomes appropriate to explain why, even if I were to agree that district courts have authority to adjudicate the validity of state convictions at sentencing hearings, the criteria for exercising this "discretionary authority," as apparently approved by the plurality opinion, is patently unfair.

Although it is not entirely clear, the plurality opinion seems to approve the criteria set forth by the Fourth Circuit in *United States v. Jones*, 977 F.2d 105 (4th Cir.1992) (*Jones II*), *cert. denied*, —— U.S. ——, 113 S.Ct. 1335, 122 L.Ed.2d 719 (1993), for determining whether a sentencing court should exercise its discretion to entertain a constitutional challenge to a state conviction. Those criteria are concerned primarily with the method of proof to be employed in presenting such challenges and the time likely to be consumed in considering them. In my judgment, the criteria that comprise the formula are flawed, and their likely effect is unfair.

Although not explicitly adopting the *Jones II* formulation, the plurality opinion cites repeatedly to *Jones II* and specifically adopts the *Jones II* requirement that "[t]o challenge the proposed use of prior conviction for sentencing purposes," the defendant must state, *inter alia:*

"[T]he anticipated means by which proof of invalidity will be attempted—whether by documentary evidence, including state court records, testimonial evidence, or combination—with an estimate of the pro-

cess and the time needed to obtain the required evidence."

Plurality op. at 1045 (quoting *Jones II*, 977 F.2d at 110). The plurality opinion then gives an example of "a challenge that a court should entertain," plurality op, that is comparable to the kind approved in *Jones II*, one in which the method of proof is documentary evidence. The plurality opinion does not, however, give an example, as *Jones II* does, of the kind of case in which "a discretionary decision not to entertain the proposed challenge obviously would be justified." *Jones II*, 977 F.2d at 110. Still, the plurality's repeated citation to *Jones II*, its adoption of specific language from that case requiring the court to focus on the method of proof and the time to be consumed in entertaining the proposed challenge, and its statement that "the *types* of proof that will be offered," plurality op (emphasis added), are important, strongly suggest that sentencing courts of this circuit are invited to apply the criteria spelled out in *Jones II* when determining whether to entertain a challenge to prior convictions.[18]

In *Jones II*, two paragraphs after the portion of 977 F.2d at 110 cited in the plurality opinion, the Fourth Circuit stated that a district court should be hesitant to entertain a challenge where it is

identified [as] one dependent upon proof of historical facts likely to be in dispute; the forecast means of proof is by testimonial evidence from witnesses not yet located or verified; the dispositive facts relate to events distant in time and place; and the estimate of time required to obtain proof indicates a protracted delay in imposing sentence. . . .

*Jones II*, 977 F.2d at 110. Under this formula, a defendant who has a legitimate challenge to the constitutionality of a prior state

---

score may be considered pursuant to § 4A1.3 (Adequacy of Criminal History Category).

*With respect to the current sentencing proceeding, this guideline or commentary does not confer upon the defendant any right to attack collaterally a prior conviction or sentence beyond any such rights otherwise recognized in law* (e.g., 21 U.S.C. 851 expressly provides that a defendant may collaterally attack certain prior convictions).

*Id.* (emphasis added). Thus, the amendment supports my reading of the current commentary.

**18.** The plurality opinion recognizes, as I do, that *Jones II* appears to have been modified by *United States v. Byrd*, 995 F.2d 536 (4th Cir.1993), as to the bases of these collateral challenges, but not as to the procedural and evidentiary criteria to be applied in deciding whether to entertain them.

conviction that could be used to compute his sentencing guidelines base offense level will have no *right* to obtain an adjudication by the sentencing court. Rather, whether his constitutional challenge is resolved is a matter within the sentencing court's discretion. And that discretion is to be exercised by the district court by determining not the force and quality of the defendant's proposed evidence, but whether the issue will be close, the proofs testimonial rather than documentary, the hearing "protracted" instead of brief, and whether the "call" is easy rather than difficult. *See id.* If the "forecast" of the proofs suggests that the invalidity of the state conviction can be proved quickly and easily through "court records or transcripts ... document[ing] the facts," the challenge "should [be] entertain[ed]." Plurality op. However, the district court will be expected to refuse to hear the matter if: 1) the defendant's claim is dependent upon "proof of historical facts likely to be in dispute"; 2) the proofs will be testimonial rather than documentary; 3) the facts "relate to events distant in time and place"; or 4) the proposed proofs portend "a protracted delay in imposing sentence." *Jones II,* 977 F.2d at 110. The Fourth Circuit's *Jones II* opinion, which the plurality has cited with approval, goes so far as to declare that if the proposed proofs of the invalidity of the prior conviction depend solely upon "the self-serving testimony of the defendant," the district court would be "well within its discretion in declining to allow the challenge to proceed further." *Id.* at 111. What an extraordinary commentary by a federal court concerning the status of the sworn testimony of an accused, even a convicted accused awaiting sentence. This, in so far as I know, is the only instance in which a United States district court will have discretion to close the courthouse doors to a federal constitutional challenge for reasons primarily related to the court's convenience.

It is a hybrid procedure unheard of in federal trial practice prior to *Jones II.* It is one in which only in the most unusual and extraordinary case will a defendant, challenging the validity of a prior state conviction, be able to prove his claim, or even mount a justiciable challenge, through "court records or transcripts ... document[ing] the facts,"

without resort to testimonial evidence and do so quickly enough that there will be no "protracted delay in imposing sentence."

Since the plurality opinion does not explicitly mandate district courts to employ the *Jones II* formulation, I trust that district judges in this circuit will find more substantial grounds for deciding whether they "should entertain" challenges to the use of prior convictions in determining guidelines sentences.

### V.

To summarize, under the Constitution and the Full Faith and Credit statute, as well as elemental notions of comity, federalism, and respect for state courts, a federal court has no "inherent power" to rule on the validity of a presumptively valid state conviction for guideline sentencing purposes. But even if there were such authority, the formula for district courts to determine whether to exercise it, as described and approved in the plurality opinion, is unfair and the relief it offers is illusory.

### VI.

Despite my disagreement with most of what my colleagues have decided, I agree, of course, that the district court erred in holding "invalid" McGlocklin's two state convictions.

KENNEDY, Circuit Judge, concurring in part and dissenting in part.

I see the en banc issue in this case as whether the sentencing court can refuse to give full faith and credit to the final judgment of state courts where the sentencing guidelines require the federal courts to take prior convictions into account.

I agree with Judge Ryan that the Guidelines do not and did not confer discretion on federal district courts to find during sentencing hearings that prior state sentences were constitutionally invalid and therefore not to be taken into account when sentencing. I also agree that the Full Faith and Credit statute as well as comity and principles of federalism require that presumptively valid

state court convictions should not be tested in sentencing proceedings where there is a state court post-conviction remedy available. Principles of comity and federalism require the exhaustion of state court remedies where a person is incarcerated under a state sentence before a federal court will pass on the constitutional validity of the state conviction, and I see no valid reason to apply a more lenient rule where the state conviction is used to enhance a sentence.

My disagreement with Judge Ryan arises in those cases where no remedy is available in the state courts and where, because a defendant has already served the entire state sentence, there is no federal habeas corpus remedy.[1] *See Maleng v. Cook,* 490 U.S. 488, 109 S.Ct. 1923, 104 L.Ed.2d 540 (1989). I read *United States v. Tucker,* 404 U.S. 443, 447, 92 S.Ct. 589, 591–92, 30 L.Ed.2d 592 (1972), and *Burgett v. Texas,* 389 U.S. 109, 88 S.Ct. 258, 19 L.Ed.2d 319 (1967), to hold that one has a constitutional right not to have a sentence enhanced by reason of an unconstitutional prior conviction. If one has such a constitutional right, there must be some forum where it can be enforced. In the absence of a state forum, a federal forum must be made available. Although a proceeding separate from the sentencing, a proceeding in which the state would be a party, might be an alternative to holding the constitutional inquiry, resolution of the issue by the sentencing judge at the time of federal sentencing appears to be the most expeditious and reasonable forum. The interest of the state in a conviction in which the sentence has been served is slight at federal sentencing. That interest can be served by notice to the state attorney general. Such a procedure would be analogous to that provided by 28

U.S.C. § 2403, which requires notice to the state attorney general when the constitutionality of a state statute is drawn into question and the state is not a party.

In the instant case, McGlocklin had no state post conviction remedy since he failed to attack his state sentences within three years, as required by Tennessee law. TENN. CODE ANN. § 40–30–102 (1990). On the other hand, he was not barred from pursuing federal habeas corpus since he was still in custody.[2] However, since we have the record before us with respect to defendant's guilty pleas and the original panel as well as a majority of the court have found that they were valid, comity and federalism issues are best served here by directing the District Court to sentence defendant taking these convictions into account and binding defendant by our adjudication of the constitutionality of the questioned convictions.

BOYCE F. MARTIN, Jr., Circuit Judge, joined by NATHANIEL R. JONES, Circuit Judge, dissenting.

Stripped of its facade, this case involves nothing more than a question of fairness. The district court simply determined that two prior Tennessee convictions were defective because the record clearly indicated that McGlocklin's guilty pleas in those cases did not comply with the requirements of the Tennessee Constitution.[1] Contrary to the opinion of Judge Ryan, the district court did not deny full faith and credit to these judgments, nor did it deny the continued existence of the judgments. Rather, the court only chose not to include these judgments in calculating the sentence imposed upon McGlocklin. Despite the exclusion of the two prior Tennessee convictions, the district

---

1. Congress recognized the need to permit federal habeas in the "absence of available corrective process or the existence of circumstances rendering such process ineffective to protect the right of the prisoner." 28 U.S.C. § 2254(b).

2. It appears that McGlocklin was on parole for both state convictions at the time of federal sentencing. Parole satisfies the "in custody" requirement of 28 U.S.C. § 2254. *Jones v. Cunningham,* 371 U.S. 236, 83 S.Ct. 373, 9 L.Ed.2d 285 (1963).

1. The district court also determined that the guilty pleas were defective under federal law, relying on *Boykin v. Alabama,* 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). While I would like to agree with the district court, I agree with the majority that the two Tennessee convictions did comport with the requirements of *Boykin.* Tennessee law, however, requires more than federal law in the taking of a guilty plea, *see State v. Mackey,* 553 S.W.2d 337 (Tenn. 1977), and I agree with the district court that the convictions did not comply with the requirements of Tennessee law.

court imposed a fairly substantial sentence for the offense committed. I believe that the district court properly conducted a hearing to determine the validity of the two prior state court convictions. I also believe that the district court properly excluded the two state court convictions from consideration in sentencing McGlocklin. In my opinion, the Constitution requires a sentencing court to entertain a defendant's objection that a conviction contained in his criminal history computation is infirm under either state law or federal law. Therefore, I must dissent from the opinion of the majority. I do not recall and have been unable to find the statement made by Judge Ryan in his dissent as to the issue presented for our review in this case. I agree that from the beginning, the issue for our consideration is that stated by Judge Guy, which is whether, under the United States Sentencing Guidelines, a defendant may challenge the use of a prior state court conviction for enhancement purposes on the grounds that the prior conviction is invalid.

I believe that Chief Judge Breyer, of the United States Court of Appeals for the First Circuit and a former member of the United States Sentencing Commission, has correctly stated the role of the sentencing guidelines: "the Guidelines cannot dictate how courts should sentence in ... special, unusual or other-than-ordinary circumstances." *United States v. Rivera*, 994 F.2d 942, 949 (1st Cir. 1993). As Judge Breyer so artfully stated, our role in reviewing a sentence is to decide if the sentence is unreasonable, *id*, and in doing so, we "must recognize a degree of district court autonomy...." *Id.* at 950. With these statements in mind, I cannot join in the opinion of the majority which affords the district court discretion, not merely in sentencing, but in deciding whether to protect a constitutional right. While the district court has discretion to fashion an appropriate sentence, the court has a distinctly different role when constitutional rights are at stake. Federal courts have a duty to protect the rights provided by the Constitution, and I cannot agree with the majority's conclusion that a district court has discretion in that respect.

According to the majority, Sentencing Guideline § 4A1.2 and its Commentary mean that the district court has discretion to decide, on a case-by-case basis, whether to consider a challenge to the inclusion of prior state court convictions in the criminal history category. In reaching this conclusion, the majority looks to Application Note 6 and the Background Note to section 4A1.2. The Application Note provides that "sentences resulting from a conviction that a defendant shows to have been previously ruled constitutionally invalid are not to be counted." U.S.S.G. § 4A1.2, comment. (n. 6) (1990). The Background Note states, "The Commission leaves for court determination the issue of whether a defendant may collaterally attack at sentencing a prior conviction." U.S.S.G. § 4A1.2, comment. (backg'd) (1990). In an attempt to harmonize these portions of the commentary, the majority concludes that a district court must exclude any conviction from the criminal history score that the defendant shows to have been previously ruled invalid, but that the "district court has the discretion, but is not required, to entertain a defendant's challenge to the constitutional validity of a prior conviction. I believe that this interpretation is fundamentally at odds with the Constitution because it condones the enhancement of a defendant's sentence, through an increased criminal history score, based on a prior conviction which was illegally obtained. Although the sentencing guidelines have changed many aspects of our criminal justice system, they cannot have changed the requirements of the Constitution.

The Constitution prohibits the use of prior uncounseled convictions, obtained in violation of *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), as a basis for sentence enhancement. *United States v. Tucker*, 404 U.S. 443, 449, 92 S.Ct. 589, 592–93, 30 L.Ed.2d 592 (1972); *Burgett v. Texas*, 389 U.S. 109, 115–16, 88 S.Ct. 258, 262, 19 L.Ed.2d 319 (1967). In reaching this conclusion, the court reasoned that to use a conviction obtained in violation of the sixth amendment right to counsel to enhance a subsequent sentence would be to violate that constitutional right once again. *Burgett*, 389 U.S. at 115, 88 S.Ct. at 262. In my opinion,

this reasoning is not confined to convictions obtained in violation of *Gideon*. As the majority admits, *supra* at 1043, the Supreme Court has never indicated that the rule of *Burgett* and *Tucker* is limited only to such convictions. In *Burgett*, 389 U.S. at 115, 88 S.Ct. at 262, the court explained that if a prior conviction abridged a "specific federal right," the prior conviction could not form the basis for an enhanced sentence. On the other hand, the court noted if a defendant attacked the inclusion of a prior conviction in sentencing as abridging only general principles of fairness, the Constitution would not warrant exclusion of the prior conviction. *Id.* *See also Spencer v. Texas*, 385 U.S. 554, 565, 87 S.Ct. 648, 654, 17 L.Ed.2d 606 (1967). Following this distinction, the court held that a court may not sentence a defendant on the basis of "misinformation of a constitutional magnitude." *Tucker*, 404 U.S. at 447, 92 S.Ct. at 592. To me, *Burgett* and *Tucker* make clear that a prior conviction which violated any specific right, rather than simple principles of fairness, may not form the basis for enhanced sentencing. Therefore, I believe that a defendant has a constitutional right to attack the use of a prior conviction at sentencing if the defendant alleges that a prior conviction involved a deprivation of a specific federal right. *See United States v. Vea–Gonzales*, 986 F.2d 321, 328–29 (9th Cir. 1993). *See also Commonwealth v. Gadd*, 665 S.W.2d 915, 917 (Ky.1984). To permit a sentencing court to impose a sentence based on a prior conviction which violates any specific federal right would be to permit another violation of the previously abridged right. *See Burgett*, 389 U.S. at 115–16, 88 S.Ct. at 262.

In *Parke v. Raley*, 506 U.S. ——, 113 S.Ct. 517, 121 L.Ed.2d 391, 403 (1992), the Supreme Court encountered a similar problem when it examined the constitutionality of Kentucky's persistent felony offender sentencing system. The court noted that, in construing the recidivism statute, the Kentucky Supreme Court had read *Burgett v. Texas*, 389 U.S. 109, 88 S.Ct. 258, 19 L.Ed.2d 319 (1967), as requiring courts to permit attacks on the validity of a prior conviction. *Parke*, —— U.S. at ——, 113 S.Ct. at 520–21, 121 L.Ed.2d at 400 (citing *Commonwealth v.*

*Gadd*, 665 S.W.2d 915, 917 (Ky.1984)). Consistent with this requirement, sentencing courts in Kentucky conducted hearings to determine the validity of a prior conviction for purposes of sentencing in each case involving a challenge to that conviction. *Id.* The Supreme Court declined to decide specifically whether the Constitution requires States to allow recidivist defendants to challenge prior guilty pleas because Kentucky's system provided for and allowed such challenges. Today, the majority reads the federal sentencing guidelines as providing an avenue of attack on prior convictions only if the sentencing court exercises its discretion to entertain the defendant's argument. The procedure approved by the court in *Parke* and the discretionary approach adopted by the majority differ significantly. Unlike the system approved by the court in *Parke*, the procedure adopted by the majority does not comport with the requirements of the Constitution because it fails to provide a consistent avenue of attack for a defendant who alleges that a prior conviction is defective.

Moreover, I see no reason to distinguish between federal rights and state rights in the context of a collateral attack on a prior conviction at sentencing. I believe that a sentencing court may not sentence a defendant based on a conviction that is invalid under either state or federal law. *Burgett*, 389 U.S. at 115–16, 88 S.Ct. at 262 and *Tucker*, 404 U.S. at 449, 92 S.Ct. at 592–93, hinge on the court's determination that sentencing a defendant based on a prior conviction would be unconstitutional if the prior conviction was illegal. That the prior conviction is invalid under state law rather than under federal law does not change this reasoning. Many states afford a more broad spectrum of rights than the rights afforded by the federal Constitution. *See, e.g., State v. Mackey*, 553 S.W.2d 337 (Tenn.1977); *Denton v. Con–Way Southern Express, Inc.*, 261 Ga. 41, 402 S.E.2d 269 (1991). Thus, a substantial number of prior state convictions will be invalid under state law even though they are valid under federal law. Whether the prior conviction violated a state right or a federal right, sentencing a defendant based on that prior conviction brings the past violation to

the present. Therefore, the sentencing court cannot sentence a defendant based on a prior conviction if that conviction is invalid in any way.

A primary purpose of the sentencing guidelines was to achieve "reasonable uniformity in sentencing by narrowing the wide disparity in sentences imposed for similar criminal offenses committed by similar offenders." U.S.S.G. Ch. 1, Pt.A.3, p.s. (1992). I agree with the Ninth Circuit that the discretionary approach adopted by the majority "may well promote disparate treatment of similarly situated defendants, a result at odds with the Guidelines' central mission." *Vea–Gonzales,* 986 F.2d at 327. As the Ninth Circuit explained, *id.,*

> The authority given to the sentencing court by a discretionary approach is nearly unlimited. While one sentencing court might find "procedural expediency" argues against consideration of a collateral attack, another might well find a similar situation sufficiently compelling to require a hearing. That cannot further the goal of uniform and predictable sentences.

To me, it is anomalous to read the sentencing guidelines in a manner which defeats their central purpose. Although the discretionary approach may enhance expediency in the sentencing process, expediency neither warrants disparate sentencing of similarly situated defendants nor justifies abridging the requirements of the Constitution. The federal courts have long heard collateral attacks on prior convictions rendered by both the federal and state courts. The *habeas corpus* statutes, 28 U.S.C. §§ 2254 and 2255, exist to permit such attacks, despite the procedural inefficiencies that a collateral attack on a prior conviction entails. "If enforcement of constitutional rights sometimes undermines efficiency, it is the price we all pay for having a constitution." *Vea–Gonzales,* 986 F.2d at 328.

In any event, holding that a defendant has a constitutional right to object to a prior conviction as invalid will not significantly undermine the efficiency of a sentencing court. As the Supreme Court noted in *Parke,* — U.S. at —, 113 S.Ct. at 523, 121 L.Ed.2d at 404, a "presumption of regularity" attaches to final judgments, even when that judgment raises constitutional questions. *See also Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938). In light of this presumption, the court has noted that it is not fundamentally unfair to place at least a burden of production on the defendant to show that a prior conviction is defective. *Parke,* — U.S. at —, 113 S.Ct. at 524–25, 121 L.Ed.2d at 405. Therefore, bald assertions by a defendant that a prior conviction is invalid will not necessitate a full hearing on the issue of the prior conviction's validity. Rather, as the majority notes, *supra* at 1045, the defendant must be able to designate some evidence, whether testimonial or documentary, substantiating the claim of invalidity before the sentencing court will be required to conduct a hearing on the issue. Therefore, a sentencing court will encounter little excess burden in ensuring that a defendant's constitutional rights remain intact.

Additionally, requiring a sentencing court to entertain challenges to a prior state conviction and to exclude those convictions which it finds defective does not implicate the Full Faith and Credit clause, U.S.Const. art. IV, § 1, or the Full Faith and Credit statute, 28 U.S.C. § 1738, nor violate principles of federalism and comity. Full Faith and Credit principles have nothing to do with the circumstances of this case, which merely addresses whether a prior state conviction shall form the basis for federal sentencing. The Full Faith and Credit clause provides, "Full faith and credit shall be given in each State to the public acts, records, and judicial proceedings of every other State." U.S.Const. art. IV, § 1. The Full Faith and Credit statute, enacted to implement the Full Faith and Credit Clause, provides that the Acts of the legislature of any State and the records and judicial proceedings of any court of any State "shall have the same full faith and credit in every court within the United States ... as they have by law or usage in the courts of such State ... from which they are taken." 28 U.S.C. § 1738. The statute provides only that judgments of one State shall have the same effect in other courts as they do by "law and usage" in the courts of the rendering State. Clearly, if a prior convic-

tion is infirm under either state or federal law, that conviction does not possess enough force or credit to require a subsequent court to enhance a defendant's sentence for a later offense. By their own terms, full faith and credit principles do not apply to convictions that are defective in some way. Moreover, it is widely recognized that "in a federal sentencing proceeding the state is not asserting a direct interest in the validity of its conviction...." *United States v. Custis,* 988 F.2d 1355, 1361 (4th Cir.1993). Finally, nothing in a sentencing court's determination to exclude a prior state conviction in calculating a defendant's sentence in any way invalidates or eradicates that previous conviction. The conviction remains on the defendant's record, and in fact, it may prevent the defendant from exercising certain civil rights. *See United States v. Tinker,* 985 F.2d 241 (6th Cir.1992). Thus, the recognition that a defendant has a constitutional right to attack a prior conviction in no way implicates either the Full Faith and Credit clause or the Full Faith and Credit statute.

Nothing in section 4A1.2, the application note, or the background note supports the majority's conclusion that a sentencing court has discretion to determine in every case whether to allow a defendant to raise a collateral challenge to a prior conviction. I believe, as the Eleventh Circuit recently held, that "[t]he Background Comment ... recognizes that—apart from the sentencing guidelines—the Constitution bars federal courts from using certain kinds of convictions at sentencing." *United States v. Roman,* 989 F.2d 1117, 1119 (11th Cir.1993). *See also United States v. Byrd,* 995 F.2d 536, 539 (4th Cir.1993) Moreover, the majority concedes, *supra* at 1043, that denying the district court discretion to consider a defendant's challenge to a prior conviction would be at odds with the holdings in *Burgett* and *Tucker.* I fail to see how the majority's discretionary approach comports with the holdings in *Burgett* and *Tucker* any more than a complete denial of the right to attack convictions collaterally comports with those holdings. The principle of *Burgett* and *Tucker* is simple: to sentence a defendant based on a prior conviction which is invalid for some reason is itself unconstitutional. How the majority con-

strues this principle to require anything other than a consistent avenue of attack on allegedly invalid prior convictions is beyond my understanding.